1  SANDRA L. McDONOUGH (SBN 193308)
   sandy.mcdonough@quarles.com
2  MATTHEW W. BURRIS (SBN 325569)
   matt.burris@quarles.com
3  **QUARLES & BRADY LLP**
   101 West Broadway, Suite 1500
4  San Diego, California 92101
   Telephone: 619-237-5200
5  Facsimile: 619-615-0700

6  Attorneys for THE REGENTS OF THE
   UNIVERSITY OF CALIFORNIA
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  EDWARD "COACH" WEINHAUS,          Case No. 2:25-cv-00262 JFW (ASx)

12          Plaintiff,                **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
                                      **DEFENDANT THE REGENTS OF**
13       v.                          **THE UNIVERSITY OF**
                                      **CALIFORNIA'S MOTION TO**
14  REGENTS OF THE UNIVERSITY OF      **DISMISS**
    CALIFORNIA,
15                                    Date:       May 5, 2025
           Defendant.                Time:       1:30 p.m.
16
                                     Judge:      John F. Walter
17                                   Mag. Judge: Alka Sagar
                                     Crtrm.:     7A
18                                   Trial Date: Not Set

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................. 2

    A.   Weinhaus Alleges He Entered Into a MGMT 169 Verbal Contract in 2018 ............................................................................ 2

    B.   Weinhaus Purportedly Enters Into Another Oral Contract in January 2023 ................................................................................... 3

    C.   Weinhaus Seeks Appointment as an Initial Continuing Lecturer and is Overwhelmingly Rejected .................................. 4

        1.   Despite multiple concerns, an ad hoc review committee recommends appointing Weinhaus as an Initial Continuing Lecturer ........................................................... 4

        2.   The Department Committee rejects the recommendation and overwhelmingly votes against appointing Weinhaus as an Initial Continuing Lecturer ...................................... 6

        3.   The Dean affirms the Department Committee's decision not to appoint Weinhaus as an Initial Continuing Lecturer .......... 6

III.    LEGAL STANDARD ......................................................................................... 7

IV.     WEINHAUS' CONTRACT-BASED CLAIMS FAIL AS A MATTER OF LAW ............................................................................................................. 8

    A.   Weinhaus Cannot Establish the Existence of a Valid Contract ............. 8

        1.   Weinhaus' employment was governed by statute, not contract ............................................................................. 8

        2.   Oral contracts with public entities are unenforceable ............... 10

        3.   Weinhaus' alleged contracts were unauthorized and thus are unenforceable against The Regents ..................................... 10

    B.   Weinhaus' Fraudulent Inducement and Unjust Enrichment Claims Cannot be Brought Against The Regents .............................. 11

        1.   The Regents are immune from common law claims ................. 11

        2.   Weinhaus' unjust enrichment claim additionally fails .............. 12

V.      WEINHAUS' ALLEGATIONS DO NOT SUPPORT A CLAIM OF DISCRIMINATION ........................................................................................ 13

VI.     WEINHAUS' FEDERAL DISCRIMINATION CLAIMS ARE TIME-BARRED ......................................................................................................... 15

VII.    CONCLUSION ................................................................................................ 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) .................................................................................................7

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) .................................................................................................7

*Cleveland v. Douglas Aircraft Co.*
   509 F.2d 1027 (9th Cir. 1975) ...............................................................................15

*Doe v. Regents of the Univ. of Cal.*
   672 F.Supp.3d 813 (N.D. Cal. 2023) ...............................................................10, 12

*Iqbal*
   566 U.S. ..................................................................................................................13

*Kendall v. Visa U.S.A. Inc.*
   518 F.3d 1042 (9th Cir. 2008) .................................................................................8

*Minor v. FedEx Office and Print Servs*.
   78 F.Supp.3d 1021 (N.D. Cal. 2015) ......................................................................4

*Sprewell v. Golden State Warriors*
   266 F.3d 979 (9th Cir. 2001) ...................................................................................8

*U.S. v. Ritchie*
   342 F.3d 903 .............................................................................................................4

**State Cases**

*Air Quality Products, Inc. v. State of Cal.*
   96 Cal.App.3d 340 (Cal. Ct. App. 1979) ...............................................................10

*Colome v. State Athletic Comm. of Cal.*
   47 Cal.App.4th 1444 (Cal. Ct. App. 1996) ............................................................11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS

*County of Santa Clara v. Sup. Ct.*
  77 Cal.App.5th 1018 (Cal. Ct. App. 2022) ................................................................ 12

*De Vries v. Regents of Univ. of Cal.*
  6 Cal.App.5th 574 (Cal. Ct. App. 2016) .................................................................... 8

*Grasko v. L.A. City Bd. of Educ.*
  31 Cal.App.3d 290 (Cal. Ct. App. 1973) ................................................................... 9

*Greenwood v. City of L.A.*
  89 Cal.App.5th 851 (Cal. Ct. App. 2023) .................................................................. 12

*Hill v. City of Long Beach*
  33 Cal.App.4th 1684 (Cal. Ct. App. 1995) ................................................................ 9

*In re Groundwater Cases*
  154 Cal.App.4th 659 (Cal. Ct. App. 2007) ................................................................ 11

*Janis v. Cal. State Lottery Com.*
  68 Cal.App.4th 824 (Cal. Ct. App. 1998) .................................................................. 12

*Katsura v. City of San Buenaventura*
  155 Cal.App.4th 104 (Cal. Ct. App. 2007) ...........................................................11, 12

*Kemmerer v. City of Fresno*
  200 Cal.App.3d (Cal. Ct. App. 1988) ........................................................................ 9

*Miller v. State of Cal.*
  18 Cal.3d 808 (Cal. 1977) ......................................................................................... 9

*Orthopedic Specialists of S. Cal. v. Public Employees' Retirement Sys.*
  228 Cal.App.4th 644 (Cal. Ct. App. 2014) ................................................................ 10

*Pasadena Live v. City of Pasadena*
  114 Cal.App.4th 1089 (Cal. Ct. App. 2004) .........................................................10, 12

*Retired Employees Assn. of Orange County, Inc. v. County of Orange*
  52 Cal.4th 1171 (Cal. 2011) ...................................................................................... 9

*Thomas v. Regents of Univ. of Cal.*
  97 Cal.App.5th 587 ................................................................................................... 12

iii

*Watson v. State of Cal. Dep't of Rehab.*
   212 Cal.App.3d 1271 (Cal. Ct. App. 1989) ................................................9

*White v. Davis*
   30 Cal.4th 528 (Cal. 2003) ...............................................................10, 11

**Federal Statutes**

42 U.S.C. § 2000e-2(a)(1) ........................................................................13

42 U.S.C.A. § 20003-5(f)(1) ......................................................................15

**State Statutes**

Article IX, section 9 of the California Constitution ...................................8

Cal. Gov. Code § 811.2 ..............................................................................8

Cal. Gov. Code § 12940(a) ........................................................................13

Cal. Gov. Code §§ 3505, 3505.1 ...............................................................9

Cal. Gov. Code § 815 ...........................................................................11, 12

Cal. Gov. Code §§ 818.8 ............................................................................11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS

# I.     INTRODUCTION

Plaintiff Edward Weinhaus was a lecturer at the University of California, Los Angeles Anderson School of Management ("UCLA"). In 2023, he applied for a promotion to Initial Continuing Lecturer and was overwhelmingly rejected due to concerns regarding the lack of rigor, lack of content, lack of organization, and lack of professionalism in his courses and teaching. As a result, Weinhaus was not appointed to Initial Continuing Lecturer and his employment with The Regents of the University of California ("The Regents" or "the University") ended.

Now, Weinhaus brings discrimination and contract-based claims against The Regents based on the termination of his employment. These claims all fail.

First, Weinhaus' contract-based claims fail because he cannot establish The Regents breached a contract. Weinhaus claims The Regents breached two oral contracts regarding his continued employment. However, oral contracts are not enforceable against any public entity, including The Regents, and none of the University's employees were authorized by statute to enter into any oral contracts, which is required to state a claim.

Second, Weinhaus' discrimination claims fail because he has not pled facts sufficient to support a plausible inference of discrimination. Weinhaus claims one student complained that Weinhaus inappropriately referenced his Jewish ethnicity and made biblical references during class, and that this complaint was later referenced in his performance review. However, this student's complaint had nothing to do with Weinhaus' ethnicity. The student's critical review of Weinhaus' course was a consistent theme by all reviewers that Weinhaus' courses lacked rigor, content, organization, and professionalism. Further, this one student's review had no effect on the decision not to appoint Weinhaus to Initial Continuing Lecturer (which had the effect of ending his employment), and Weinhaus fails to plead any facts plausibly alleging that the decision not to appoint him to Initial Continuing Lecturer and end his employment was based on his ethnicity or religion.

1

For these reasons, and explained more fully below, The Regents respectfully requests this Court grant its motion to dismiss with prejudice.

## II.    FACTUAL BACKGROUND

Weinhaus was employed by The Regents as a lecturer at UCLA from August 1, 2016 through December 31, 2022.  (Compl., ¶¶ 8, 15.)  His employment was subject to a Collective Bargaining Agreement ("CBA") between Non-Senate Faculty (Unit 18) and The Regents.  (*Id*., ¶ 15.)  As part of this CBA, Weinhaus taught courses pursuant to "appointments," which UCLA largely controlled.  (*Id*., ¶ 51.)  As Weinhaus admits, UCLA was not obligated to appoint him to any courses, or to continue his appointment of any course.  (*Id*., ¶ 51(a)-(c).)

Weinhaus alleges that, on January 1, 2023, he was "*purportedly* re-employed" as a "*putative* Continuing Faculty Lecturer on January 1, 2023 through February 28, 2023, and was, for some unexplained reason, not subject to the CBA during this purported employment.  (*Id*., ¶ 18 (emphasis added).)

Weinhaus devotes a considerable portion of his pleading on averments about his own perceived success as a lecturer during his time at UCLA.  (*See, e.g.*, *id*., ¶ 31-45, 99-103(d), 165-172.)  Similarly, Weinhaus writes at length about his unrelated success as an attorney in private practice, including as a civil rights litigator. (*Id*., ¶¶ 39-45.)

### A.    Weinhaus Alleges He Entered Into a MGMT 169 Verbal Contract in 2018

In 2018, Weinhaus alleges he entered into a verbal contract with Dr. Al Osborne, former Director of the Price Center for Entrepreneurship & Innovation at the UCLA Anderson School of Management, in response to a UCLA "budget *pickle*."  (*Id*., ¶¶ 62 (emphasis in original), 64.)  As part of this alleged oral contract (the "purported MGMT 169 Verbal Contract"), Weinhaus claims Dr. Osborne promised "he would be able to teach the classroom-enabled-hybrid-version of an experiential class (MGMT 169) going forward when this class ultimately became

2

approved should Dr. Osborne find his teaching skills satisfactory upon personal observation." (*Id.*, ¶ 63.) Weinhaus also alleges Dr. Osborne promised that Weinhaus "could continue to teach the course so long as it was offered regardless of any CBA-controlled APPOINTMENT." (*Id.*) Weinhaus alleges that in return, Weinhaus would "create a first draft of the syllabus." (*Id.*) Weinhaus does not allege Dr. Osborne was constitutionally or statutorily authorized to enter into any contract on behalf of The Regents, only that The Regents "confirmed…on a call" that he had the authority to do so. (*Id.*, ¶ 140.)

Weinhaus alleges he fully performed his side of the purported oral contract, but it was breached when the "Director of the UME [Undergraduate Minor in Entrepreneurship] program" (the "Director") began simultaneously teaching the same course in a subsequent quarter. (*Id.*, ¶¶ 73, 97.) According to Weinhaus, the Director then modified the purported oral contract to allow Weinhaus to teach one section per year of the MGMT 169 course, and to otherwise provide him at least four classes per year. (*Id.*, ¶ 98.) Weinhaus claims he accepted the modification of this alleged oral contract. (*Id.*, ¶ 205 ("…first violated by Defendant's UNILATERAL MODIFICATION which Plaintiff accepted.").)

### B. Weinhaus Purportedly Enters Into Another Oral Contract in January 2023

Weinhaus alleges he entered into yet another oral contract in January 2023, this time with "the Director," rather than Dr. Osborne. (*Id.*, ¶ 138.) As part of this purported January 2023 oral contract, Weinhaus would teach a Social Entrepreneurship course, create the syllabus, and make the course more rigorous. (*Id.*, ¶¶ 131-132, 134.) Weinhaus alleges he agreed to do so under certain conditions, including (1) performance of the previous promises made in the purported MGMT 16 Verbal Contract; (2) a promotion to an adjunct faculty position; and (3) all the typical benefits given to employees. (*Id.*, ¶ 136.) He further alleges the Director accepted these conditions, and that Weinhaus later performed

3

1   with flying colors. (*Id.*, ¶¶ 138-139, 141.)

2      As with the purported MGMT 16 Verbal Contract, Weinhaus does not allege

3   the Director had authority to enter into an oral contract with Weinhaus on behalf of

4   The Regents, and he does not even allege the identity of the Director. Similar to his

5   prior allegations of an oral contract, he alleges that this authority was "confirmed …

6   on a call" on February 17, 2023. (*Id.*, ¶ 140.)

7     **C.**    **Weinhaus Seeks Appointment as an Initial Continuing Lecturer**

8            **and is Overwhelmingly Rejected**

9         **1.**    **Despite multiple concerns, an ad hoc review committee**

10              **recommends appointing Weinhaus as an Initial Continuing**

11              **Lecturer**

12      During 2022, Weinhaus' Excellence Review process regarding an

13   appointment to Initial Continuing Lecturer went forward. (Compl., ¶ 128.) First, a

14   three-person ad hoc committee reviewed his dossier. (Request for Judicial Notice

15   ("RJN"), Ex. A.)[1]  The ad hoc review committee recommended Weinhaus'

16   appointment as an Initial Continuing Lecturer despite several concerns. For

17   example, the ad hoc committee noted a comment from one of Weinhaus' students:

18   "we were told there would be no midterms or finals, not even homework due." (*Id.*,

19   RJN, Ex. A, p. 2.)  The ad hoc committee emphasized the positive student

20

---

21   [1] The documents applicable to Weinhaus' excellence review (Exhibits A through C

22   to The Regents' RJN) may properly be considered by the Court on a Rule 12 Motion. *U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003 ("A court may,

23   however, consider certain materials – documents attached to the complaint, documents incorporated by reference, or matters of judicial notice – without

24   converting the motion to dismiss into a motion for summary judgment.").  Here, Weinhaus incorporates references to documents of his appointment to continuing

25   initial lecturer throughout the Complaint. (*See, e.g.*, Compl., ¶ 23 ("False Review");

26   ¶ 128-30 (Department Review), ¶ 152 (Dean Bernardo's review).)  Official records of state agencies are also proper subjects of judicial notice. *Minor v. FedEx Office*

27   *and Print Servs.*, 78 F.Supp.3d 1021, 1027 (N.D. Cal. 2015).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS

comments Weinhaus received, but also noted critical comments on "the unstructured nature of the course," and that Weinhaus was "disrespectful to students." (*Id.*, p. 3.) For example, students stated: "[P]rofessor is arrogant and extremely unprofessional," and "I felt often the professor was quick to shut down other students opinions for a chance to prove them wrong." (*Id.*) One student reviewer submitted a letter not recommending Weinhaus' continued appointment, commenting that Weinhaus:

> [M]ade everyone call him 'coach' . . . and referred to himself frequently as "the hardest drinking Jew in Chicago". He also taught every lesson about integrity or morality through Old Testament examples and expected us to apply….biblical stories to our internship experiences. His class was entertaining for the sheer ridiculous nature of it, but it took hours of lecture time that added no value.

(*Id.*, p. 4; *compare* Compl., ¶¶ 24-25.)

Another reviewer, who supported Weinhaus' appointment, stated: "It should be noted that Coach has a notoriously brash, no-nonsense attitude that is definitely something to acclimate to and can be taken as ill-mannered, crass or offensive…. Additionally, his email etiquette was often atrocious and often entirely unhelpful." (*Id.*)

The ad hoc review committee noted the reported lack of rigor in Weinhaus' courses. Even professors who supported his appointment admitted that "his classes aren't as rigorous or challenging as claimed. I would say that his courses require somewhere between average or below average levels of work." (*Id.*)

Despite these deficiencies, the three-person ad hoc review committee decided that Weinhaus' contributions outweighed these concerns and recommended to the Department Committee that Weinhaus be appointed as an Initial Continuing Lecturer.

2.     **The Department Committee rejects the recommendation and overwhelmingly votes against appointing Weinhaus as an Initial Continuing Lecturer**

Unlike its small ad hoc and staffing committees,[2] the Management Department Committee is quite large.  Forty-five faculty members reviewed Weinhaus' dossier and met on December 2, 2022, to discuss the case.  (RJN, Ex. B, p. 1.)  On December 15, 2022, the Department Committee issued its report, which did not refer to or mention Weinhaus' ethnicity, and found that Weinhaus' biblical references in class "did not appear to be an issue." (*Id.*, p. 3.)  Rather, the faculty on the Department Committee "were very critical [of Weinhaus], referring to a lack of rigor in the courses, lack of content, lack of organization, and lack of professionalism." (*Id.*)  The Department faculty voted against appointing Weinhaus as an Initial Continuing Lecturer by a tally of 34-9.  (*Id.*, p. 1.)

3.     **The Dean affirms the Department Committee's decision not to appoint Weinhaus as an Initial Continuing Lecturer**

On February 16, 2023, Dean of the UCLA Anderson School of Management, Antonio Bernardo, issued a final decision, declining to appoint Weinhaus as an Initial Continuing Lecturer, which had the effect of ending his employment at UCLA.  (RJN, Ex. C.)  Before determining that Weinhaus' performance did not meet the standard of excellence, Dean Bernardo reviewed the Department Committee report referenced above, Weinhaus' response to that letter, and conducted an independent assessment into the strengths and weaknesses of Weinhaus' teaching record.  (*Id.*, p. 1.)  In doing so, he noted two main concerns: a lack of rigor in Weinhaus' courses, and student complaints about Weinhaus'

---

[2] For completeness, a five-member staffing committee later reviewed the Management Department's ad hoc committee report.  The Staffing Committee advises the department chair on all academic personnel matters.  (RJN, Ex. B.)  It voted 4-1 in favor of appointing Weinhaus to initial Continuing Lecturer.  (*Id*.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS

1  abrasiveness, insensitivity, and lack of professionalism.  (*Id.*, p. 1-2.)  Dean

2  Bernardo concluded, "In sum, Mr. Weinhaus' teaching record has clear strengths,

3  but concerns about the rigor of his courses, his professionalism and the learning

4  environment in his classroom, and his failure to address these concerns, are

5  important and valid.  Taken together, these factors indicate that Mr. Weinhaus does

6  not meet the high standard of 'excellence' required . . ." (*Id.*, p. 2.)  Dean

7  Bernardo's letter does not reference Weinhaus' ethnicity or his in-class biblical

8  references.

9      Notably, Weinhaus alleges that he was denied an appointment to an Initial

10  Continuing Lecturer position because UCLA wanted to increase the number of

11  classes available to be taught by tenured faculty, not because of his ethnicity or

12  religion.  (Compl., ¶¶ 126-27.)

13  **III.    LEGAL STANDARD**

14      Rule 12(b)(6) requires Weinhaus to plead a set of facts which, if true, would

15  entitle him to relief, or else face dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S.

16  544, 555 (2007).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff

17  must plead "enough facts to state a claim to relief that is plausible on its face,"

18  *Twombly*, 550 U.S. at 570, and raise "more than a sheer possibility that a defendant

19  has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has

20  facial plausibility when the plaintiff pleads factual content that allows the court to

21  draw the reasonable inference that the defendant is liable for the misconduct

22  alleged."  *Id.*  However, where the facts pleaded "are merely consistent with a

23  defendant's liability," the complaint "stops short of the line between possibility and

24  plausibility of entitlement to relief."  *Id.*

25      Weinhaus must overcome his burden to provide factual allegations that

26  amount to more than a speculative basis for relief.  *Iqbal*, 556 U.S. at 678.

27  Conclusory allegations cannot state a claim and need not be accepted as true.  *See*

28  *Twombly*, 550 U.S. at 555-57 ("more than labels and conclusions" are required);

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Rather, a plaintiff must allege "evidentiary facts which, if true, will prove the elements" of the claim.  *Kendall v. Visa U.S.A. Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

## IV. WEINHAUS' CONTRACT-BASED CLAIMS FAIL AS A MATTER OF LAW

### A. Weinhaus Cannot Establish the Existence of a Valid Contract

Weinhaus' contract-based claims (his fifth through eighth causes of action) are all based on two alleged oral contracts: what he refers to as the "MGMT 169 Verbal Contract" and the "January 2023 Contract."  (*Id.*, ¶¶ 201 ("The Plaintiff and Defendant entered into an oral contract…"); 215 ("Plaintiff and Defendant entered into another oral contract…"), 227, 234.)

These claims suffer defects as a matter of law that cannot be cured by amendment.  First, it is well-settled that as a public employee, Weinhaus' employment was governed by statute, not by contract. Second, contracts with public entities must be written, and cannot be based on quasi-contractual theories, such as unjust enrichment.  Finally, Weinhaus does not allege the two employees he orally contracted with were constitutionally or statutorily authorized to contract on behalf of The Regents, and these contracts are void and unenforceable as a result.

#### 1. Weinhaus' employment was governed by statute, not contract

The Regents is a public entity that governs the University of California system, which in turn is created under Article IX, section 9 of the California Constitution.  Cal. Const. Art. 9, § 9; *De Vries v. Regents of Univ. of Cal.*, 6 Cal.App.5th 574, 587 (Cal. Ct. App. 2016); Cal. Gov. Code § 811.2 ("'Public entity' includes…the Regents of the University of California…").

It "is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time

8

or contrary to the terms and conditions fixed by law." *Miller v. State of Cal.*, 18 Cal.3d 808, 813-814 (Cal. 1977) (citations omitted); s*ee* Cal. Gov. Code §§ 3505, 3505.1; *Retired Employees Assn. of Orange County, Inc. v. County of Orange*, 52 Cal.4th 1171, 1182 (Cal. 2011). The California Government Code expressly authorizes public employment to be governed by collective bargaining agreements, but not private agreements. Cal. Gov. Code § 3505, 3505.1; *Retired Employees Assn.,* 52 Cal.4th at 1188 (Cal. 2011); *Grasko v. L.A. City Bd. of Educ.*, 31 Cal.App.3d 290, 303-04 (Cal. Ct. App. 1973). Courts, therefore, may dismiss a public employee's breach of contract claims, and any claims based on the existence of an individual employment contract. *Kemmerer v. City of Fresno*, 200 Cal.App.3d 426 (Cal. Ct. App. 1988); *Watson v. State of Cal. Dep't of Rehab.*, 212 Cal.App.3d 1271, 1287-88 (Cal. Ct. App. 1989).

For example, in *Hill v. City of Long Beach*, a city employee filed breach of contract claims associated with his removal from his position with the city, which were dismissed on demurrer. *Hill v. City of Long Beach*, 33 Cal.App.4th 1684 (Cal. Ct. App. 1995). The California Court of Appeal upheld the demurrer, finding that the city employee "was not entitled to contract remedies against the City for his removal from the position of managing director. His remedies, if any, were confined to those provided by statute or ordinance." *Id.* at 1690.

Here, Weinhaus claims his employment was subject to two oral contracts: the purported "MGMT 169 Verbal Contract" and "January 2023 Contract." (*See* Compl., ¶¶ 64, 138.) His fifth and sixth causes of action allege The Regents breached both contracts, and his seventh and eighth causes of action allege quasi-contractual theories based on the same. However, all these causes of action fail because Weinhaus was a public employee, and therefore these two alleged oral contracts could not govern his employment. "His remedies, if any, [are] confined to those provided by statute or ordinance." *Hill*, 33 Cal.App.4th at 1690.

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS

### 2.    Oral contracts with public entities are unenforceable

Even if Weinhaus could establish that his employment was governed by contract, "an oral promise cannot be enforced against a government agency." *Orthopedic Specialists of S. Cal. v. Public Employees' Retirement Sys.*, 228 Cal.App.4th 644, 650-51 (Cal. Ct. App. 2014). As such, courts have repeatedly granted motions to dismiss and demurrers where a plaintiff based his breach of contract claim against a public entity on an oral contract. *Id.* (sustaining demurrer without leave to amend); *Pasadena Live v. City of Pasadena*, 114 Cal.App.4th 1089, 1094 (Cal. Ct. App. 2004) (sustaining demurrer of public employee's contract claim "because it was based on an oral contract."); *Doe v. Regents of the Univ. of Cal.*, 672 F.Supp.3d 813, 822 (N.D. Cal. 2023) (granting motion to dismiss unjust enrichment claim with prejudice in part because it was based on oral contract).

Here, Weinhaus does not allege The Regents breached any written contract; he alleges only that The Regents breached oral contracts. (Compl., ¶¶ 201 ("The Plaintiff and Defendant entered into an oral contract…"); 215 ("Plaintiff and Defendant entered into another oral contract…").) As a matter of law, these oral contracts are unenforceable against The Regents. His fifth through eighth causes of action thus fail as a matter of law and should be dismissed with prejudice.

### 3.    Weinhaus' alleged contracts were unauthorized and thus are unenforceable against The Regents

Weinhaus' contract-based claims additionally fail because "no contractual obligation may be enforced against a public agency unless it appears the agency was authorized by the Constitution or statute to incur the obligation; a contract entered into by a governmental entity without the requisite constitutional or statutory authority is void and unenforceable." *White v. Davis*, 30 Cal.4th 528, 549 (Cal. 2003) (citations omitted); *Air Quality Products, Inc. v. State of Cal.*, 96 Cal.App.3d 340, 349 (Cal. Ct. App. 1979).

In *Katsura v. City of San Buenaventura*, the California Court of Appeal

10

1    determined a contractor could not recover on an oral contract made by an employee

2    of the city, as there was no statutory provision "for execution of oral contracts by

3    employees of the City who do not have requisite authority."  *Katsura v. City of San*

4    *Buenaventura*, 155 Cal.App.4th 104, 109 (Cal. Ct. App. 2007).  As such, the

5    "alleged oral statements by the [city employees were] insufficient to bind the City."

6    *Id.*

7         Weinhaus alleges he entered into oral contracts with "head of the Price Center

8    of UCLA Anderson" Dr. Al Osborne, and the "Director of the UME program,"

9    which were binding on The Regents.  (*See* Compl., ¶¶ 42, 73.)  However, in support

10   of this purported binding authority, Weinhaus alleges only that The Regents

11   "confirmed that DIRECTOR and the Price Center had the authority to contract with

12   Plaintiff outside the CBA on a call during Winter 2023 Quarter on or about February

13   17, 2023."  (*Id.*, ¶ 140.)  Weinhaus does not otherwise identify any constitutional or

14   statutory provision showing Dr. Osborne or the Director were authorized to enter

15   into contracts on behalf of The Regents.  (*See* Compl., ¶¶ 42, 73.)  He has therefore

16   failed to plead the existence of a binding contract, as both alleged oral contracts are

17   "void and unenforceable."  *See White*, 30 Cal.4th at 549.  His contract-based claims

18   should be dismissed as a matter of law.

19   **B.    Weinhaus' Fraudulent Inducement and Unjust Enrichment Claims**

20   **Cannot be Brought Against The Regents**

21   **1.    The Regents are immune from common law claims**

22        Weinhaus asserts two common law claims against The Regents: fraudulent

23   inducement and unjust enrichment (seventh and eighth causes of action).  Both of

24   these claims fail based on The Regents' immunity under Government Code sections

25   815(a) and 818.8.  Cal. Gov't Code § 815(a); Cal. Gov't Code § 818.8; *Colome v.*

26   *State Athletic Comm. of Cal.* (1996) 47 Cal.App.4th 1444, 1454; *In re Groundwater*

27   *Cases*, 154 Cal.App.4th 659, 688 (Cal. Ct. App. 2007) ("Of course there is no

28   common law tort liability for public entities in California; such liability is wholly

11

statutory."); *County of Santa Clara v. Sup. Ct.,* 77 Cal.App.5th 1018, 1028 (Cal. Ct. App. 2022) ("Section 815 immunizes public entities from liability on common law theories."); *Thomas v. Regents of Univ. of Cal.*, 97 Cal.App.5th 587, 639-41 [explaining misrepresentation immunity and collecting cases].

Given The Regents is immune from Weinhaus' common law claims, no amendment can cure the defects as to his seventh and eighth causes of action. *See Greenwood v. City of L.A.*, 89 Cal.App.5th 851 (Cal. Ct. App. 2023) (sustaining demurrer without leave to amend based on governmental immunities). Accordingly, the Court should sustain The Regents' motion to dismiss as to his seventh and eighth causes of action with prejudice.

### 2.    Weinhaus' unjust enrichment claim additionally fails

Even if Weinhaus could bring common law claims against The Regents, "[i]t is settled that 'a private party cannot sue a public entity on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations.'" *Katsura v. City of San Buenaventura*, 155 Cal.App.4th 104, 109-10 (Cal. Ct. App. 2007) (citing *Janis v. Cal. State Lottery Com.*, 68 Cal.App.4th 824, 830 (Cal. Ct. App. 1998).

Specifically, a "plaintiff cannot sustain a claim against UC Regents for unjust enrichment." *Doe v. Regents of the Univ. of Cal.*, 672 F.Supp.3d 813, 822 (N.D. Cal. 2023) (sustaining motion to dismiss unjust enrichment claim against The Regents). This is particularly true if the contract is an oral one. (*See Pasadena Live,* 114 Cal.App.4th at 1094 (sustaining demurrer to unjust enrichment claim based on oral contract).)

Weinhaus asserts an unjust enrichment claim against The Regents based on a purported oral contract. This claim is precluded under settled law. Therefore, Weinhaus' unjust enrichment claim should be dismissed with prejudice, as no amendment can cure this defect.

## V.    WEINHAUS' ALLEGATIONS DO NOT SUPPORT A CLAIM OF DISCRIMINATION

Weinhaus brings four claims for discrimination based on his religious beliefs and Jewish ethnicity. Each of these claims require him to plead facts sufficient to support a reasonable inference that his termination was due to his religion and/or ethnicity. 42 U.S.C. § 2000e-2(a)(1) (Title VII); Cal. Gov. Code § 12940(a) (FEHA). As discussed above, this inference must be "plausible," more than merely "possible." *Iqbal*, 566 U.S. at 678.

Weinhaus has not and cannot alleged facts sufficient to support this plausible inference. His discrimination claims are based entirely on his allegation that he was not appointed to an Initial Continuing Lecturer position, and thus his employment at UCLA ended because the Department Committee determined he did not meet the required performance standard. (Compl., ¶¶ 128, 150.) According to Weinhaus, his entire performance review was improper because a student complained that Weinhaus referred to himself frequently as "the hardest drinking Jew in Chicago," and "taught every lesson about integrity or morality through Old Testament examples." (*Id*., ¶ 24.) This theory of discrimination fails for multiple reasons.

First, while Weinhaus references the contents of the Department Committee report and Dean Bernardo's report repeatedly throughout his Complaint, he does not attach either of the reports to his pleading, for obvious reasons. The Department Committee report makes zero references to his ethnicity and concludes that his biblical references "did not appear to be an issue." (RJN, Ex. B.) Rather, the Department Committee did not recommend that Weinhaus be appointed as an Initial Continuing Lecturer because students reported experiencing "a lack of rigor in the courses, lack of content, lack of organization, and lack of professionalism" in his courses. (*Id.* at 3.) Dean Bernardo—the final decision maker—concurred with this assessment. Dean Bernardo's report makes no mention of Weinhaus' ethnicity or religion.

13

Second, Weinhaus' theory of discrimination is contradicted by other allegations in his Complaint.  For example, Weinhaus alleges he had been employed by The Regents since 2016, and his "educational and professional accomplishments were always combined with his leadership in and prolific advocate of Jewish life." (*Id*., ¶¶ 15, 120.)  Thus, Weinhaus alleges that The Regents was well aware of Weinhaus' ethnicity for at least five years prior to his employment ending, but did not take any adverse action against him.  (*See also id*., ¶ 117 ("Plaintiff had been a strong proponent of Jewish causes prior to notification of any adverse action…").) According to Weinhaus' own allegations, his employment was positively affected by his Jewish ethnicity, given his "professional accomplishments were always combined with his…Jewish life."  (*Id*., ¶ 120.)

Third, Weinhaus himself alleges a more plausible (albeit unsupported and incomplete) basis for his non-appointment in the Complaint—that The Regents was motivated to appoint fewer Initial Continuing Lecturers so there would be more courses for tenured faculty to teach.  (Compl., ¶¶ 126-27.)  If so, that would be a non-discriminatory basis for an adverse employment decision.

The most plausible reading of Weinhaus' Complaint is that The Regents did not appoint Weinhaus to Initial Continuing Lecturer (which ended his employment with UCLA) because his courses lacked rigor, lacked content, lacked organization, and lacked professionalism.  These determinations were a proper exercise of The Regents' academic judgment, proper subjects for a performance review, and do not support a plausible inference that The Regents discriminated against Weinhaus based on his religion or ethnicity.

Weinhaus has not pled facts sufficient to support his discrimination claims. The Regents' motion to dismiss his first through fourth causes of action should be granted.

/ / /

/ / /

14

## VI.    WEINHAUS' FEDERAL DISCRIMINATION CLAIMS ARE TIME-BARRED

To bring his first and second claims for Title VII discrimination in federal court, Weinhaus was required to first exhaust his administrative remedies with the Equal Employment Opportunity Commission ("EEOC") by receiving a right-to-sue letter.  42 U.S.C.A. § 20003-5(f)(1).  After receiving this letter, Weinhaus had 90 days to file his Complaint, or else the statute of limitations would bar his Title VII claims.  (*Id*.)

Weinhaus includes as Exhibit B to his Complaint a right-to-sue letter from the EEOC, dated October 15, 2024.  (Compl., ¶ 13.)  He filed his Complaint in federal court 87 days later, on January 10, 2025.  (*See* Compl.)  However, The Regents received a *prior* EEOC right-to-sue notice with the same case number, dated *August 15, 2024*.  (RJN, Ex. D.)  This letter is identical in every other way to the letter attached to the Complaint as Exhibit B.

If the EEOC issues two right-to-sue letters for the same charge, the 90-day period "must be deemed to run from the issuance of the first letter."  *Cleveland v. Douglas Aircraft Co.*, 509 F.2d 1027, 1030 (9th Cir. 1975) (overruled on other grounds by *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170 (9th Cir. 1986).  This is because the EEOC has no statutory authority to issue a second right-to-sue letter, and thus, the "issuance by the EEOC of a second right to sue letter…is without effect."  *Id.*

Here, Weinhaus' first right-to-sue letter dated August 15, 2024 is the operative letter.  (RJN, Ex. D.)  Accordingly, he had until November 13, 2024, to file his Complaint.  He did not file it until January 10, 2025.  His first and second causes of action for discrimination in violation of Title VII are therefore untimely and should be dismissed with prejudice.

## VII.    CONCLUSION

For the foregoing reasons, The Regents respectfully requests this Court grant its motion to dismiss Weinhaus' complaint in its entirety, with prejudice.

15

1 Dated:  March 17, 2025   QUARLES & BRADY LLP

2

3          By:  */s/ Kelly M. Butler*

4             SANDRA L. McDONOUGH

5             MATTHEW W. BURRIS

             Attorneys for THE REGENTS OF THE

6             UNIVERSITY OF CALIFORNIA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS