1   SANDRA L. McDONOUGH (SBN 193308)
    sandy.mcdonough@quarles.com
2   MATTHEW W. BURRIS (SBN 325569)
    matt.burris@quarles.com
3   KELLY M. BUTLER (SBN 342394)
    kelly.butler@quarles.com
4   **QUARLES & BRADY LLP**
    101 West Broadway, Suite 1500
5   San Diego, California 92101
    Telephone: 619-237-5200
6   Facsimile: 619-615-0700

7   Attorneys for THE REGENTS OF THE
    UNIVERSITY OF CALIFORNIA

8

9                **UNITED STATES DISTRICT COURT**

10               **CENTRAL DISTRICT OF CALIFORNIA**

11

12   EDWARD "COACH" WEINHAUS,          Case No. 2:25-cv-00262 JFW (ASx)

13           Plaintiff,               **DEFENDANT THE REGENTS OF
                                      THE UNIVERSITY OF
14       v.                          CALIFORNIA'S MEMORANDUM
                                      OF POINTS AND AUTHORITIES
15   REGENTS OF THE UNIVERSITY OF     IN SUPPORT OF MOTION TO
     CALIFORNIA,                      DISMISS PLAINTIFF'S FIRST
16                                    AMENDED COMPLAINT**
             Defendant.
17                                    Date:        June 16, 2025
                                      Time:        1:30 p.m.
18
                                      Judge:       John F. Walter
19                                    Mag. Judge:  Alka Sagar
                                      Crtrm.:      7A
20                                    Trial Date:  Not Set

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 2

    A.    Weinhaus Alleges He Entered Into MGMT 169 Contract in 2018 ........ 2

    B.    Weinhaus Purportedly Enters Into Another Oral Contract in January 2023 ......................................................................................... 4

    C.    Weinhaus Seeks Appointment as an Initial Continuing Lecturer and is Overwhelmingly Rejected ............................................................ 4

        1.    Despite multiple concerns, an ad hoc review committee recommends appointing Weinhaus as an Initial Continuing Lecturer ........................................................................................ 4

        2.    The Department Committee rejects the recommendation and overwhelmingly votes against appointing Weinhaus as an Initial Continuing Lecturer ...................................................... 6

        3.    The Dean affirms the Department Committee's decision not to appoint Weinhaus as an Initial Continuing Lecturer ......... 7

III.  LEGAL STANDARD ................................................................................. 8

IV.   WEINHAUS' CONTRACT-BASED CLAIMS FAIL AS A MATTER OF LAW ................................................................................... 8

    A.    Weinhaus Cannot Establish the Existence of a Valid Contract ............. 8

        1.    Weinhaus' employment was governed by statute, not contract ...................................................................................... 9

        2.    Oral contracts with public entities are unenforceable ............... 10

        3.    Weinhaus' alleged contracts were unauthorized and thus are unenforceable against The Regents ...................................... 11

    B.    Weinhaus' Common Law Claims Cannot be Brought Against The Regents ....................................................................................... 12

        1.    The Regents are immune from common law claims ................... 12

        2.    Weinhaus' unjust enrichment claim additionally fails .............. 13

    C.    No Cause of Action Exists for Equitable Estoppel ............................. 14

V.    WEINHAUS' ALLEGATIONS DO NOT SUPPORT A CLAIM OF DISCRIMINATION .............................................................................. 14

VI.   WEINHAUS' PRAYER FOR PUNITIVE DAMAGES SHOULD BE DISMISSED ..................................................................................... 16

i

VII.    CONCLUSION ............................................................................................... 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

5

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)..........................................................................8, 14

6

7

*Bell Alt. Corp. v. Twombly*
   550 U.S. 544 (2007)................................................................................8

8

9

*City of Newport v. Fact Conerts, Inc.*
   453 U.S. 247 (1981)..............................................................................16

10

11

*Doe v. Regents of the Univ. of Cal.*
   672 F.Supp.3d 813 (N.D. Cal. 2023).............................................10, 13

12

13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*
   751 F.3d 990 (9th Cir. 2014.) ...............................................................14

14

15

*Kendall v. Visa U.S.A. Inc.*
   518 F.3d 1042 (9th Cir. 2008) ................................................................8

16

17

*New Hampshire v. Maine*
   531 U.S. 742 ........................................................................................11

18

19

*Orellana v. Mayorkas*
   6 F.4th 1034 (2021)..............................................................................16

20

21

*S.T. by and through Niblett v. City of Ceres*
   327 F.Supp.3d 1261 (E.D. Cal. 2018) ..................................................16

22

23

*Sprewell v. Golden State Warriors*
   266 F.3d 979 (9th Cir. 2001) ..................................................................8

24

25

*U.S. v. Ritchie*
   342 F.3d 903 (9th Cir. 2003) ..................................................................5

26

27

*Whitehead v. Pacifica Senior Living Mgmt. LLC*
   2022 WL 313844 (9th Cir. Feb. 2, 2022) .............................................14

28

1

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**State Cases**

*Air Quality Products, Inc. v. State of Cal.*
  96 Cal.App.3d 340 (Cal. Ct. App. 1979) ................................................. 11

*Behnke v. State Farm General Ins. Co.*
  196 Cal.App.4th 1443 (Cal. Ct. App. 2011) ............................................ 14

*Colome v. State Athletic Comm. of Cal.*
  47 Cal.App.4th 1444 (Cal. Ct. App. 1996) .............................................. 12

*County of Santa Clara v. Sup. Ct.*
  77 Cal.App.5th 1018 (Cal. Ct. App. 2022) .............................................. 12

*De Vries v. Regents of Univ. of Cal.*
  6 Cal.App.5th 574 (Cal. Ct. App. 2016) ..................................................... 9

*Grasko v. L.A. City Bd. of Educ.*
  31 Cal.App.3d 290 (Cal. Ct. App. 1973) ................................................... 9

*Greenwood v. City of L.A.*
  89 Cal.App.5th 851 (Cal. Ct. App. 2023) ................................................ 13

*Hill v. City of Long Beach*
  33 Cal.App.4th 1684 (Cal. Ct. App. 1995) .............................................. 10

*In re Groundwater Cases*
  154 Cal.App.4th 659 (Cal. Ct. App. 2007) .............................................. 12

*Janis v. Cal. State Lottery Com.*
  68 Cal.App.4th 824 (Cal. Ct. App. 1998) ................................................ 13

*Katsura v. City of San Buenaventura*
  155 Cal.App.4th 104 (Cal. Ct. App. 2007) ........................................ 12, 13

*Kemmerer v. City of Fresno*
  200 Cal.App.3d (Cal. Ct. App. 1988) ......................................................... 9

*Miller v. State of Cal.*
  18 Cal.3d 808 (Cal. 1977) ........................................................................... 9

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*Orthopedic Specialists of S. Cal. v. Public Employees' Retirement Sys.*
   228 Cal.App.4th 644 (Cal. Ct. App. 2014) ............................................................10

*Pasadena Live v. City of Pasadena*
   114 Cal.App.4th 1089 (Cal. Ct. App. 2004) ..................................................10, 13

*Retired Employees Assn. of Orange County, Inc. v. County of Orange*
   52 Cal.4th 1171 (Cal. 2011) ...................................................................................9

*Thomas v. Regents of Univ. of Cal.*
   97 Cal.App.5th 587 ................................................................................................13

*Watson v. State of Cal. Dep't of Rehab.*
   212 Cal.App.3d 1271 (Cal. Ct. App. 1989) ............................................................9

*White v. Davis*
   30 Cal.4th 528 (Cal. 2003).............................................................................11, 12

**Federal Statutes**

42 U.S.C. § 2000e-2(a)(1) .........................................................................................14

42 U.S.C.A. § 1983.............................................................................................16, 17

**State Statutes**

Article IX, section 9 of the California Constitution ....................................................9

Cal. Gov. Code § 811.2 ...............................................................................................9

Cal. Gov. Code § 818.8 .............................................................................................12

Cal. Gov. Code § 12940(a) (FEHA).........................................................................14

Cal. Gov. Code §§ 3505, 3505.1 ................................................................................9

Cal. Gov. Code § 818, 818.8 ..............................................................................12, 16

Cal. Gov. Code § 815(a) .....................................................................................12, 13

3

**Other Authorities**

13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 190, p. 527)................14

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## I.    INTRODUCTION

Plaintiff Edward Weinhaus was a lecturer at the University of California, Los Angeles Anderson School of Management ("UCLA").  In 2023, he applied for a promotion to Initial Continuing Lecturer and was overwhelmingly rejected due to concerns regarding the lack of rigor, lack of content, lack of organization, and lack of professionalism in his courses and teaching.  As a result, Weinhaus was not appointed to Initial Continuing Lecturer and his employment with The Regents of the University of California ("The Regents" or "the University") ended.

Now, Weinhaus brings discrimination and contract-based claims against The Regents based on the termination of his employment.  These claims all fail and Weinhaus' pleadings are still woefully deficient, even after having an opportunity to amend in response to The Regents' motion to dismiss his original complaint.

First, Weinhaus' contract-based claims fail because he cannot establish The Regents breached a contract.  Weinhaus claims The Regents breached two oral contracts regarding his continued employment.  However, oral contracts are not enforceable against any public entity, including The Regents, and none of the University's employees were authorized by statute to enter into any oral contracts, which is required to state a claim.

Second, Weinhaus' discrimination claims fail because he has not pled facts sufficient to support a plausible inference of discrimination.  Weinhaus claims one student complained that Weinhaus inappropriately referenced his Jewish ethnicity and made biblical references during class, and that this complaint was later referenced in his performance review.  However, this student's complaint had nothing to do with Weinhaus' ethnicity.  The student's critical review of Weinhaus' course was a consistent theme by all reviewers that Weinhaus' courses lacked rigor, content, organization, and professionalism.  Further, this one student's review had no effect on the decision not to appoint Weinhaus to Initial Continuing Lecturer (which had the effect of ending his employment), and Weinhaus fails to plead any

1  facts plausibly alleging that the decision not to appoint him to Initial Continuing
2  Lecturer and end his employment was based on his ethnicity or religion.

3  For these reasons, and explained more fully below, The Regents respectfully
4  requests this Court grant its motion to dismiss with prejudice.

5  **II.    FACTUAL BACKGROUND**

6  Weinhaus was employed by The Regents as a lecturer at UCLA from August
7  1, 2016 through December 31, 2022.  (First Am. Compl. ("FAC"), ¶ 17 [ECF No.
8  24].)  His employment was subject to a Collective Bargaining Agreement ("CBA")
9  between Non-Senate Faculty (Unit 18) and The Regents.  (*Id*.)  As part of this CBA,
10  Weinhaus taught courses pursuant to "appointments," which UCLA largely
11  controlled.  (*Id*., ¶ 58.)  As Weinhaus admits, UCLA was not obligated to appoint
12  him to any courses, or to continue his appointment of any course.  (*Id*., ¶ 58(a)-(c).)

13  Weinhaus alleges that, on January 1, 2023, he was "*purportedly* 're-
14  employed'" as a "*putative* Continuing Faculty Lecturer" from January 1, 2023
15  through April 3, 2023, and was, for some unexplained reason, not subject to the
16  CBA during this purported employment.  (*Id*., ¶ 20 (emphasis added).)

17  Weinhaus devotes a considerable portion of his pleading on averments about
18  his own perceived success as a lecturer during his time at UCLA.  (*See, e.g.*, *id*., ¶¶
19  38-53, 115-20, 188-92.)  Similarly, Weinhaus writes at length about his unrelated
20  success as an attorney in private practice, including as a civil rights litigator. (*Id*., ¶¶
21  44, 46-51.)

22  **A.    Weinhaus Alleges He Entered Into MGMT 169 Contract in 2018**

23  In 2018, Weinhaus alleges he entered into a verbal contract with Dr. Al
24  Osborne, former Director of the Price Center for Entrepreneurship & Innovation at
25  the UCLA Anderson School of Management, in response to a UCLA "budget
26  *pickle*."  (*Id*., ¶¶ 71-77 (emphasis in original).)  As part of this alleged oral contract

27

28

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

(the "MGMT 169 Contract"),[1] Weinhaus claims Dr. Osborne promised "he would be able to teach the classroom-enabled-hybrid-version of an experiential class (MGMT 169) going forward when this class ultimately became approved should Dr. Osborne find his teaching skills satisfactory upon personal observation." (*Id.*, ¶ 74.) Weinhaus also alleges Dr. Osborne promised that Weinhaus "could continue to teach the course so long as it was offered regardless of any CBA-controlled APPOINTMENT." (*Id.*, ¶ 76) Weinhaus alleges that in return, Weinhaus would "create a first draft of the syllabus." (*Id.*, ¶ 74) Weinhaus does not allege Dr. Osborne was constitutionally or statutorily authorized to enter into any contract on behalf of The Regents; he alleges only that The Regents' unidentified "actions confirmed" he was so authorized, and that this authority was "confirmed…on a call." (*Id.*, ¶ 160.)

Weinhaus alleges he fully performed his side of the purported oral contract, but it was breached when the "Director of the UME [Undergraduate Minor in Entrepreneurship] program" (the "Director") was allowed "to teach the same course at the same time in Spring 2021." (*Id.*, ¶ 113.) According to Weinhaus, the Director then modified the purported oral contract to allow Weinhaus to teach one section per year of the MGMT 169 course, and to otherwise make up missing classes. (*Id.*, ¶ 114.)[2]

/ / /

/ / /

---

[1] Weinhaus cannot deny that this alleged agreement is oral in nature. In his initial complaint, he expressly described the same as the "purported MGMT 169 Verbal Contract." (Compl. ¶¶ 62-64, 201 [ECF 1].) It appears all he did to avoid the law barring enforcement of oral contracts against The Regents was to delete the word "Verbal."

[2] Though Weinhaus omits this from his FAC, his initial Complaint alleged he accepted modification of this alleged oral contract. (Compl., ¶ 205 [ECF 1].)

### B.      Weinhaus Purportedly Enters Into Another Oral Contract in January 2023

Weinhaus alleges he entered into yet another oral contract[3] in January 2023, this time with "the Director," rather than Dr. Osborne.  (*Id*., ¶¶ 152, 156.)  As part of this purported January 2023 oral contract, Weinhaus would teach a Social Entrepreneurship course, create the syllabus, and make the course more rigorous. (*Id*., ¶ 152.)  Weinhaus alleges he agreed to do so under certain conditions, including (1) performance of the previous promises made in the purported MGMT 169 Contract; (2) receiving five courses to teach as part of the 2022-2023 academic year; (3) a promotion to an adjunct faculty position; and (4) all the typical benefits given to employees.  (*Id*., ¶ 154.)  He further alleges the Director accepted these conditions, and that Weinhaus later performed as required.  (*Id*., ¶¶ 156, 158.)

As with the purported MGMT 169 Contract, Weinhaus does not allege the Director had authority to enter into an oral contract with Weinhaus on behalf of The Regents, and he does not even bother to identity the Director.  Similar to his prior allegations of an oral contract, he alleges that this authority was "confirmed…on a call" on February 17, 2023.  (*Id*., ¶ 160.)

### C.      Weinhaus Seeks Appointment as an Initial Continuing Lecturer and is Overwhelmingly Rejected

####         1.      Despite multiple concerns, an ad hoc review committee recommends appointing Weinhaus as an Initial Continuing Lecturer

During 2022, Weinhaus' Excellence Review process regarding an

---

[3] Weinhaus cannot deny that this alleged agreement is oral in nature, either. In his initial complaint, he expressly described the same as "another oral contract." (Compl., ¶¶ 20, 215 [ECF 1].)  It appears he again merely removed the word "oral" from his FAC in an attempt to avoid the law barring enforcement of oral contracts against The Regents.

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

appointment to Initial Continuing Lecturer went forward. (FAC, ¶ 146.) First, a
three-person ad hoc committee reviewed his dossier. (Declaration of Matthew
Burris ("Burris Decl."), Ex. A.)[4] The ad hoc review committee recommended
Weinhaus' appointment as an Initial Continuing Lecturer despite several concerns.
For example, the ad hoc committee noted a comment from one of Weinhaus'
students: "we were told there would be no midterms or finals, not even homework
due." (*Id.*, p. 2.) The ad hoc committee emphasized the positive student comments
Weinhaus received, but also noted critical comments on "the unstructured nature of
the course," and that Weinhaus was "disrespectful to students." (*Id.*, p. 3.) For
example, students stated: "[P]rofessor is arrogant and extremely unprofessional,"
and "I felt often the professor was quick to shut down other students opinions for a
chance to prove them wrong." (*Id.*)

One student reviewer submitted a letter not recommending Weinhaus'
continued appointment, commenting that Weinhaus:

> [M]ade everyone call him "coach" . . . and referred to
> himself frequently as "the hardest drinking Jew in
> Chicago". He also taught every lesson about integrity or
> morality through Old Testament examples and expected
> us to apply….biblical stories to our internship experiences.
> His class was entertaining for the sheer ridiculous nature

---

[4] The documents applicable to Weinhaus' excellence review (Exhibits A through C
to the Burris Declaration) may properly be considered by the Court on a Rule 12
Motion. *U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) ("A court may,
however, consider certain materials – documents attached to the complaint,
documents incorporated by reference, or matters of judicial notice – without
converting the motion to dismiss into a motion for summary judgment."). Here,
Weinhaus incorporates references to documents of his appointment to continuing
initial lecturer throughout the FAC. (*See, e.g.*, FAC, ¶ 29 ("False Review"); ¶ 33
(Dean Bernardo's review); ¶ 146 (Department Review).)

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

of it, but it took hours of lecture time that added no value. (Burris Decl., Ex. A, p. 4; *compare* FAC, ¶ 30(a)-(b).)

Another reviewer, who supported Weinhaus' appointment, stated:  "It should be noted that Coach has a notoriously brash, no-nonsense attitude that is definitely something to acclimate to and can be taken as ill-mannered, crass or offensive…. Additionally, his email etiquette was often atrocious and often entirely unhelpful." (Burris Decl., Ex. A, p. 4.)

The ad hoc review committee noted the reported lack of rigor in Weinhaus' courses. Even professors who supported his appointment admitted that "his classes aren't as rigorous or challenging as claimed. I would say that his courses require somewhere between average or below average levels of work."  (*Id.*)

Despite these deficiencies, the three-person ad hoc review committee decided that Weinhaus' contributions outweighed these concerns and recommended to the Department Committee that Weinhaus be appointed as an Initial Continuing Lecturer.

### 2. The Department Committee rejects the recommendation and overwhelmingly votes against appointing Weinhaus as an Initial Continuing Lecturer

Unlike its small ad hoc and staffing committees,[5] the Management Department Committee is quite large.  Forty-five faculty members reviewed Weinhaus' dossier and met on December 2, 2022, to discuss the case.  (Burris Decl., Ex. B, p. 1.)  On December 15, 2022, the Department Committee issued its report, which did not refer to or mention Weinhaus' ethnicity, and found that Weinhaus'

---

[5] For completeness, a five-member staffing committee later reviewed the Management Department's ad hoc committee report.  The Staffing Committee advises the department chair on all academic personnel matters.  (Burris Decl., Ex. B.)  It voted 4-1 in favor of appointing Weinhaus to initial Continuing Lecturer. (*Id.*)

biblical references in class "did not appear to be an issue." (*Id.*, p. 3.)  Rather, the faculty on the Department Committee "were very critical [of Weinhaus], referring to a lack of rigor in the courses, lack of content, lack of organization, and lack of professionalism." (*Id.*)  The Department faculty voted against appointing Weinhaus as an Initial Continuing Lecturer by a tally of 34-9.  (*Id.*, p. 1.)

### 3.    The Dean affirms the Department Committee's decision not to appoint Weinhaus as an Initial Continuing Lecturer

On February 16, 2023, Dean of the UCLA Anderson School of Management, Antonio Bernardo, issued a final decision, declining to appoint Weinhaus as an Initial Continuing Lecturer, which had the effect of ending his employment at UCLA.  (Burris Decl., Ex. C.)  Before determining that Weinhaus' performance did not meet the standard of excellence, Dean Bernardo reviewed the Department Committee report referenced above, Weinhaus' response to that letter, and conducted an independent assessment into the strengths and weaknesses of Weinhaus' teaching record.  (*Id.*, p. 1.)  In doing so, he noted two main concerns: a lack of rigor in Weinhaus' courses, and student complaints about Weinhaus' abrasiveness, insensitivity, and lack of professionalism.  (*Id.*, p. 1-2.)  Dean Bernardo concluded, "In sum, Mr. Weinhaus' teaching record has clear strengths, but concerns about the rigor of his courses, his professionalism and the learning environment in his classroom, and his failure to address these concerns, are important and valid.  Taken together, these factors indicate that Mr. Weinhaus does not meet the high standard of 'excellence' required . . ." (*Id.*, p. 2.)  Dean Bernardo's letter does not reference Weinhaus' ethnicity or any in-class biblical references.

Notably, Weinhaus alleges he was denied an appointment to an Initial Continuing Lecturer position because UCLA wanted to strategically increase its rankings by having a more accomplished but smaller student body and this strategy "would mean fewer classes for the tenured faculty to teach, who were also

7

1  contractually guaranteed teaching positions" and "fewer classes would be available

2  for the existing faculty if they were to grant" the promotion—not because of

3  Weinhaus' ethnicity or religion.  (FAC, ¶ 143.)

## III.   LEGAL STANDARD

5          Rule 12(b)(6) requires Weinhaus to plead a set of facts which, if true, would

6  entitle him to relief, or else face dismissal.  *Bell Alt. Corp. v. Twombly*, 550 U.S.

7  544, 555 (2007).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff

8  must plead "enough facts to state a claim to relief that is plausible on its face,"

9  *Twombly*, 550 U.S. at 570, and raise "more than a sheer possibility that a defendant

10 has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has

11 facial plausibility when the plaintiff pleads factual content that allows the court to

12 draw the reasonable inference that the defendant is liable for the misconduct

13 alleged."  *Id*.  However, where the facts pleaded "are merely consistent with a

14 defendant's liability," the complaint "stops short of the line between possibility and

15 plausibility of entitlement to relief."  *Id*.

16         Weinhaus must overcome his burden to provide factual allegations that

17 amount to more than a speculative basis for relief.  *Iqbal*, 556 U.S. at 678.

18 Conclusory allegations cannot state a claim and need not be accepted as true.  *See*

19 *Twombly*, 550 U.S. at 555-57 ("more than labels and conclusions" are required);

20 *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Rather, a

21 plaintiff must allege "evidentiary facts which, if true, will prove the elements" of the

22 claim.  *Kendall v. Visa U.S.A. Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

## IV.   WEINHAUS' CONTRACT-BASED CLAIMS FAIL AS A MATTER OF LAW

### A.   Weinhaus Cannot Establish the Existence of a Valid Contract

26         Weinhaus' contract-based claims (his Fifth through Ninth Causes of Action)

27 are all based on two alleged oral contracts: the purported MGMT 169 Contract and

28 the purported January 2023 Contract.  These claims suffer defects as a matter of law

8

that cannot be cured by amendment.  First, it is well-settled that as a public employee, Weinhaus' employment was governed by statute, not by contract. Second, contracts with public entities must be written, and cannot be based on quasi-contractual theories, such as unjust enrichment.  Finally, Weinhaus does not allege the two employees he orally contracted with were constitutionally or statutorily authorized to contract on behalf of The Regents, and these contracts are void and unenforceable as a result.

### 1.    Weinhaus' employment was governed by statute, not contract

The Regents is a public entity that governs the University of California system, which in turn is created under Article IX, section 9 of the California Constitution.  Cal. Const. Art. 9, § 9; *De Vries v. Regents of Univ. of Cal.*, 6 Cal.App.5th 574, 587 (Cal. Ct. App. 2016); Cal. Gov. Code § 811.2 ("'Public entity' includes…the Regents of the University of California…").

It "is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law."  *Miller v. State of Cal.*, 18 Cal.3d 808, 813-814 (Cal. 1977) (citations omitted); s*ee* Cal. Gov. Code §§ 3505, 3505.1; *Retired Employees Assn. of Orange County, Inc. v. County of Orange*, 52 Cal.4th 1171, 1182 (Cal. 2011).  The California Government Code expressly authorizes public employment to be governed by collective bargaining agreements, but not private agreements.  Cal. Gov. Code § 3505, 3505.1; *Retired Employees Assn.,* 52 Cal.4th at 1188 (Cal. 2011); *Grasko v. L.A. City Bd. of Educ.*, 31 Cal.App.3d 290, 303-04 (Cal. Ct. App. 1973).  Courts, therefore, may dismiss a public employee's breach of contract claims, and any claims based on the existence of an individual employment contract.  *Kemmerer v. City of Fresno*, 200 Cal.App.3d 426 (Cal. Ct. App. 1988); *Watson v. State of Cal. Dep't of Rehab.*, 212 Cal.App.3d

9

1271, 1287-88 (Cal. Ct. App. 1989).

For example, in *Hill v. City of Long Beach*, a city employee filed breach of contract claims associated with his removal from his position with the city, which were dismissed on demurrer. *Hill v. City of Long Beach*, 33 Cal.App.4th 1684 (Cal. Ct. App. 1995). The California Court of Appeal upheld the demurrer, finding that the city employee "was not entitled to contract remedies against the City for his removal from the position of managing director. His remedies, if any, were confined to those provided by statute or ordinance." *Id*. at 1690.

Here, Weinhaus claims his employment was subject to two obviously oral contracts: the purported "MGMT 169 Contract" and "January 2023 Contract." (*See* FAC., ¶¶ 225, 241.) His fifth cause of action alleges The Regents breached both contracts, and his sixth through ninth causes of action allege quasi-contractual theories based on the same. However, all these causes of action fail because Weinhaus was a public employee, and therefore these two alleged oral contracts could not govern his employment. "His remedies, if any, [are] confined to those provided by statute or ordinance." *Hill*, 33 Cal.App.4th at 1690.

### 2. Oral contracts with public entities are unenforceable

Even if Weinhaus could establish that his employment was governed by contract, "an oral promise cannot be enforced against a government agency." *Orthopedic Specialists of S. Cal. v. Public Employees' Retirement Sys.*, 228 Cal.App.4th 644, 650-51 (Cal. Ct. App. 2014). As such, courts have repeatedly granted motions to dismiss and demurrers where a plaintiff based his breach of contract claim against a public entity on an oral contract. *Id*. (sustaining demurrer without leave to amend); *Pasadena Live v. City of Pasadena*, 114 Cal.App.4th 1089, 1094 (Cal. Ct. App. 2004) (sustaining demurrer of public employee's contract claim "because it was based on an oral contract."); *Doe v. Regents of the Univ. of Cal.*, 672 F.Supp.3d 813, 822 (N.D. Cal. 2023) (granting motion to dismiss unjust enrichment claim with prejudice in part because it was based on oral contract).

Here, Weinhaus concludes the contracts were reduced to writing because UCLA entered him into its course system.  (FAC, ¶¶ 235, 236.)  But, he does not even allege any writing exists showing these alleged contracts were actually reduced to writing or attach any such contract to his FAC.  Weinhaus' conclusory allegations are insufficient to establish the existence of a written contract.  Further, in his initial Complaint, Weinhaus expressly and repeatedly claimed both of these agreements were oral agreements.  (See Compl., ¶¶ 201 ("The Plaintiff and Defendant entered into an oral contract…"); 215 ("Plaintiff and Defendant entered into another oral contract…") [ECF 1].)  He is judicially estopped from arguing the opposite now. *See New Hampshire v. Maine*, 531 U.S. 742, 749-50 (judicial estoppel prohibits "parties from deliberately changing positions according to the exigencies of the moment").

Because Weinhaus did not enter into any authorized written agreement with The Regents, these oral contracts are unenforceable against it.  His fifth through ninth causes of action thus fail as a matter of law and should be dismissed with prejudice.

### 3.    Weinhaus' alleged contracts were unauthorized and thus are unenforceable against The Regents

Weinhaus' contract-based claims additionally fail because "no contractual obligation may be enforced against a public agency unless it appears the agency was authorized by the Constitution or statute to incur the obligation; a contract entered into by a governmental entity without the requisite constitutional or statutory authority is void and unenforceable."  *White v. Davis*, 30 Cal.4th 528, 549 (Cal. 2003) (citations omitted); *Air Quality Products, Inc. v. State of Cal.*, 96 Cal.App.3d 340, 349 (Cal. Ct. App. 1979).

In *Katsura v. City of San Buenaventura*, the California Court of Appeal determined a contractor could not recover on an oral contract made by an employee of the city, as there was no statutory provision "for execution of oral contracts by

1  employees of the City who do not have requisite authority." *Katsura v. City of San*

2  *Buenaventura*, 155 Cal.App.4th 104, 109 (Cal. Ct. App. 2007). As such, the

3  "alleged oral statements by the [city employees were] insufficient to bind the City."

4  *Id.*

5        Weinhaus alleges he entered into oral contracts with "head of the Price Center

6  of UCLA Anderson" Dr. Al Osborne, and the "Director of the UME program,"

7  which were binding on The Regents. (*See* FAC., ¶¶ 74, 152, 156.) However, in

8  support of this purported binding authority, Weinhaus alleges only that The

9  Regents' "actions confirmed that the DIRECTOR and the Price Center had the

10  authority to contract with Plaintiff outside the CBA," and that it confirmed this

11  authority "on a call during Winter 2023 Quarter on or about February 17, 2023, less

12  than a week before the adverse action." (*Id.*, ¶ 160.) Weinhaus does not otherwise

13  identify any constitutional or statutory provision showing Dr. Osborne or the

14  Director were authorized to enter into contracts on behalf of The Regents. (*See,*

15  *e.g.*, FAC, ¶¶ 9, 285.) He has therefore failed to plead the existence of a binding

16  contract, as both alleged oral contracts are "void and unenforceable." *See White*, 30

17  Cal.4th at 549. His contract-based claims should be dismissed as a matter of law.

18      **B.**    **Weinhaus' Common Law Claims Cannot be Brought Against The**

19           **Regents**

20           **1.**    **The Regents are immune from common law claims**

21        Weinhaus asserts three common law claims against The Regents: fraudulent

22  inducement, misrepresentation, and unjust enrichment (sixth, seventh, and ninth

23  causes of action). Each of these claims fail based on The Regents' immunity under

24  Government Code sections 815(a) and 818.8. Cal. Gov. Code § 815(a); Cal. Gov.

25  Code § 818.8; *Colome v. State Athletic Comm. of Cal.* 47 Cal.App.4th 1444, 1454

26  (Cal. Ct. App. 1996); *In re Groundwater Cases*, 154 Cal.App.4th 659, 688 (Cal. Ct.

27  App. 2007) ("Of course there is no common law tort liability for public entities in

28  California; such liability is wholly statutory."); *County of Santa Clara v. Sup. Ct.*, 77

1  Cal.App.5th 1018, 1028 (Cal. Ct. App. 2022) ("Section 815 immunizes public

2  entities from liability on common law theories."); *Thomas v. Regents of Univ. of*

3  *Cal.*, 97 Cal.App.5th 587, 639-41 [explaining misrepresentation immunity and

4  collecting cases].

5        Given The Regents is immune from Weinhaus' common law claims, no

6  amendment can cure the defects as to his sixth, seventh, and ninth causes of action.

7  *See Greenwood v. City of L.A.*, 89 Cal.App.5th 851 (Cal. Ct. App. 2023) (sustaining

8  demurrer without leave to amend based on governmental immunities).  Accordingly,

9  the Court should sustain The Regents' motion to dismiss as to the sixth, seventh, and

10  ninth causes of action with prejudice.

11              **2.      Weinhaus' unjust enrichment claim additionally fails**

12        Even if Weinhaus could bring common law claims against The Regents, "[i]t

13  is settled that 'a private party cannot sue a public entity on an implied-in-law or

14  quasi-contract theory, because such a theory is based on quantum meruit or

15  restitution considerations which are outweighed by the need to protect and limit a

16  public entity's contractual obligations.'"  *Katsura v. City of San Buenaventura*, 155

17  Cal.App.4th 104, 109-10 (Cal. Ct. App. 2007) (citing *Janis v. Cal. State Lottery*

18  *Com.*, 68 Cal.App.4th 824, 830 (Cal. Ct. App. 1998).

19        Specifically, a "plaintiff cannot sustain a claim against UC Regents for unjust

20  enrichment." *Doe v. Regents of the Univ. of Cal.*, 672 F.Supp.3d 813, 822 (N.D.

21  Cal. 2023) (sustaining motion to dismiss unjust enrichment claim against The

22  Regents).  This is particularly true if the contract is an oral one.  (*See Pasadena*

23  *Live,* 114 Cal.App.4th at 1094 (sustaining demurrer to unjust enrichment claim

24  based on oral contract).)

25         Weinhaus asserts an unjust enrichment claim against The Regents based on a

26  purported oral contract.  This claim is precluded under settled law.  Therefore,

27  Weinhaus' unjust enrichment claim should be dismissed with prejudice, as no

28  amendment can cure this defect.

### C.    No Cause of Action Exists for Equitable Estoppel

A "stand-alone cause of action for equitable estoppel will not lie as a matter of law." *Behnke v. State Farm General Ins. Co.*, 196 Cal.App.4th 1443, 1463 (Cal. Ct. App. 2011).  This is because the "equitable estoppel doctrine acts defensively only." *Id.* (citing 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 190, p. 527).  Therefore, Weinhaus' eighth claim for equitable estoppel fails as a matter of law.

## V.    WEINHAUS' ALLEGATIONS DO NOT SUPPORT A CLAIM OF DISCRIMINATION

Weinhaus brings four claims for discrimination based on his religious beliefs and Jewish ethnicity: two under 42 U.S.C. § 2000e-2(a)(1) (Title VII) and two under Cal. Gov. Code § 12940(a) (FEHA). Each of these claims require him to plead facts sufficient to support an inference that his termination was due to his religion and/or ethnicity.  See *Whitehead v. Pacifica Senior Living Mgmt. LLC*, No. 21-15035, 2022 WL 313844, at *2 (9th Cir. Feb. 2, 2022) (holding district court properly granted motion to dismiss where plaintiff failed to plead sufficient facts).   This inference must be "plausible," more than merely "possible[,]" *Iqbal*, 566 U.S. at 678, and "[w]hen considering plausibility, courts must also consider an obvious alternative explanation for defendant's behavior." *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996 (9th Cir. 2014.)

Weinhaus has not and cannot alleged facts sufficient to support a plausible inference of discrimination.  His discrimination claims are based entirely on his allegation that he was not appointed to an Initial Continuing Lecturer position, and thus his employment at UCLA ended because the Department Committee determined he did not meet the required performance standard.  (FAC, ¶¶ 29, 145.) According to Weinhaus, his entire performance review was improper because a student complained that Weinhaus referred *to himself* frequently as "the hardest drinking Jew in Chicago," and "taught every lesson about integrity or morality

14

through Old Testament examples." (*Id*., ¶ 30.) This theory of discrimination fails for multiple reasons.

First, while Weinhaus references the contents of the Department Committee report and Dean Bernardo's report repeatedly throughout his Complaint, he does not attach either of the reports to his pleading, for obvious reasons. The Department Committee report makes zero references to his ethnicity and concludes that his biblical references "did not appear to be an issue." (Burris Decl., Ex. B.) Rather, the Department Committee did not recommend that Weinhaus be appointed as an Initial Continuing Lecturer because students reported experiencing "a lack of rigor in the courses, lack of content, lack of organization, and lack of professionalism" in his courses. (*Id.*, p. 3.) Dean Bernardo—the final decision maker—concurred with this assessment. Dean Bernardo's report makes no mention of Weinhaus' ethnicity or religion.

Second, Weinhaus' theory of discrimination is contradicted by other allegations in his FAC. For example, Weinhaus alleges he had been employed by The Regents since 2016, and his "educational and professional accomplishments were always combined with his leadership in and prolific advocate of Jewish life." (*Id*., ¶¶ 17, 137.) Thus, Weinhaus alleges that The Regents was well aware of Weinhaus' ethnicity for at least five years prior to his employment ending, but did not take any adverse action against him. (*See also id*., ¶ 134 ("Plaintiff had been a strong proponent of Jewish causes prior to notification of any adverse action…").) According to Weinhaus' own allegations, his employment was positively affected by his Jewish ethnicity, given his "professional accomplishments were always combined with his…Jewish life." (*Id*., ¶ 137.)

Third, Weinhaus himself alleges a more plausible (albeit unsupported and incomplete) alternative explanation for his non-appointment in the Complaint—that The Regents was motivated to appoint fewer Initial Continuing Lecturers so there would be more courses for tenured faculty to teach. (*Id*., ¶¶ 143, 145.) If so, that

would be a non-discriminatory basis for an adverse employment decision.  *Orellana v. Mayorkas*, 6 F.4th 1034, 1043-44 (2021) (finding plaintiff failed to state plausible claim where "the complaint itself undermines . . . [plaintiff's] theory of the case and renders it implausible.").

The most plausible reading of Weinhaus' Complaint is that The Regents did not appoint Weinhaus to Initial Continuing Lecturer (which ended his employment with UCLA) because his courses lacked rigor, lacked content, lacked organization, and lacked professionalism.  These determinations were a proper exercise of The Regents' academic judgment, proper subjects for a performance review, and do not support a plausible inference that The Regents discriminated against Weinhaus based on his religion or ethnicity.

Weinhaus has not pled facts sufficient to support his discrimination claims.  The Regents' motion to dismiss his first through fourth causes of action should be granted.

## VI.   WEINHAUS' PRAYER FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

Weinhaus additionally seeks "punitive damages where permitted by law, in an amount sufficient to punish and deter" The Regents' conduct.  But, because no state or federal law permits punitive damages against The Regents, Weinhaus can never state a plausible claim to recover them.

Specifically, California Government Code section 818 provides that "a public entity is not liable" for punitive damages, "or other damages imposed primarily for the sake of example and by way of punishing the defendant."  Cal. Gov. Code § 818.  Similarly, Section 1983 of the United States Code does not allow for punitive damages against public entities, who are immune as a matter of federal law.  42 U.S.C.A. § 1983; *S.T. by and through Niblett v. City of Ceres*, 327 F.Supp.3d 1261, 1283-84 (E.D. Cal. 2018) (citing *City of Newport v. Fact Conerts, Inc.*, 453 U.S. 247, 271 (1981) ("public entities, like the City, are immune from punitive damages

16

under § 1983 and California law.").

Because The Regents cannot be liable for punitive damages as a matter of law, Weinhaus cannot recover them against The Regents under any theory and his request for such damages should be dismissed with prejudice.

## VII.  CONCLUSION

For the foregoing reasons, The Regents respectfully requests this Court grant its motion to dismiss Weinhaus' First Amended Complaint in its entirety, with prejudice.

Dated:  May 15, 2025                    QUARLES & BRADY LLP


                                        By:     /s/ Matthew W. Burris
                                                SANDRA L. McDONOUGH
                                                MATTHEW W. BURRIS
                                                KELLY M. BUTLER
                                                Attorneys for THE REGENTS OF THE
                                                UNIVERSITY OF CALIFORNIA

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT