1

2  EDWARD "COACH" WEINHAUS, ESQ.
   LegalSolved LLC
3  CA BAR #330344, Licensed before C.D.Cal.
   11500 Olive Blvd. Suite 133
4  Creve Coeur, MO. 63141
   Telephone: 314-580-9580
5  E-mail: eaweinhaus@gmail.com

6  Plaintiff in Pro Per

7

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  EDWARD "COACH" WEINHAUS,          Case No. 2:25-cv-00262 JFW (ASx)

12          Plaintiff,                **PLAINTIFF'S OPPOSITION TO
                                      DEFENDANT'S MOTION TO
13      v.                            DISMISS THE FIRST AMENDED
                                      COMPLAINT**
14  REGENTS OF THE UNIVERSITY OF
    CALIFORNIA,                       Hearing Date:  6/16/25 @1:30 PM
15
            Defendant.
16                                    Judge:       John F. Walter
                                      Mag. Judge:  Alka Sagar
17                                    Crtrm.:      7A
                                      Trial Date:  Not Set
18

19

20

21

22

23

24

25

26

27

28

---

1

**TABLE OF CONTENTS**

2

I.     INTRODUCTION .............................................................................. 6

3

4

II.    ARGUMENT ..................................................................................... 7

5

A.   FAC Discrimination Claims (I-IV) Allege Plausible Title VII and FEHA

6

Claims Of Disparate Treatment Based On Plaintiff's Jewishness ......................... 7

7

8

B.   Plaintiff And Defendant Entered Into A Valid Contract, Which Plaintiff

9

Performed, Defendant Recognized, Marketed, and Then Breached ..................... 11

10

1.   Plaintiff Alleges That The Contracts Were Duly Authorized And Reduced

11

To Writing Which Have Not Been Judicially Estopped ................................... 11

12

13

2.   Even If The Contract Were Not Determined To Be In Writing At A Later

14

Stage, Plaintiff's Contract Claims Would Survive Under An Implied-In-Fact Or

15

Contract Completion In California Law ............................................................ 13

16

17

C.   Defendant Has Misread The Law For Public Entity Tort Immunity With The

18

Facts Alleged For Counts VI and VII. ................................................................. 15

19

20

D.   Equitable Estoppel Can Be A Standalone Basis For Relief But Otherwise

21

The FAC Adequately Pleads Promissory Estoppel. .............................................. 17

22

E.   The Unjust Enrichment Count Should Survive Because Defendant Has

23

Failed To Show There Are No Methods By Which Plaintiff Can Prevail And The

24

FAC Requests All Non-Monetary Equitable Remedies ........................................ 19

25

26

III.   CONCLUSION ............................................................................... 20

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**TABLE OF AUTHORITIES**

**CASES**

*Bay Area Surgical Mgmt., LLC v. Principal Life Ins. Co.*, No. 5:12-CV-01140 EJD, 2012 WL 4058373 (N.D. Cal. Sept. 14, 2012)....................................................16

*Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115 (9th Cir. 2000) ...................................7

*Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090 (9th Cir. 2005) ...............10

*County of Santa Clara v. Superior Court* 14 Cal.5th 1034 (2023) ...........................18

*Dallman Co. v. Southern Heater Co.*, 262 Cal. App. 2d 582 (1968) .......................14

*Division of Labor Law Enforcement v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268 (1977) .......................................................................................................13

*EEOC v. Boeing Co.*, 577 F.3d 1044 (9th Cir. 2009)....................................................7

*Geissal v. Moore Med. Corp.*, 524 U.S. 74 (1998) ....................................................17

*Hill v. Kaiser Aetna,* 130 Cal. App. 3d 188 (1982)....................................................16

*Hilltop Properties, Inc. v. State*, 233 Cal. App. 2d 349 (1965)................................16

*Interstate Fire & Casualty Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234 (9th Cir. 1998) ................................................................................................................11

*Johnson v. City of Shelby*, 574 U.S. 10 (2014)...........................................................17

*Johnson v. State of California*, 69 Cal. 2d 782 (1968)...............................................14

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ........................9

*Krolikowski v. San Diego City Employees' Retirement System*, 24 Cal. App. 5th 537 (2018) .............................................................................................................................16

*Larsen v. AirTran Airways, Inc.*, 2009 U.S. Dist. LEXIS 116045, 2009 WL 4827522 ..................................................................................................................... 17

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ........................................ 8

*Maglica v. Maglica*, 66 Cal. App. 4th 442 (1998) ................................................. 18

*Masayesva v. Hale*, 118 F.3d 1371 (9th Cir. 1997) ............................................... 11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...................................... 9

*Michael J. v. Los Angeles County Department of Adoptions*, 201 Cal. App. 3d 859 (1988) ........................................................................................................ 14, 15

*Porporato v. Devincenzi*, 261 Cal. App. 2d 670 (1968) ........................................ 16

*Requa v. Regents of University of California*, 213 Cal. App. 4th 213 (2012) ......... 13

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ............................................... 7

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) .............................................. 10

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ....................... 8

*Timmerman v. U. S. Bank, N.A.*, 483 F.3d 1106 (10th Cir. 2007) .......................... 10

*United States v. Collicott*, 92 F.3d 973 (9th Cir. 1996) ........................................... 9

*United States v. Reese*, 666 F.3d 1007 (7th Cir. 2012) ........................................... 9

*US Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887 (2005) .................... 16

*Youngman v. Nevada Irrigation District*, 70 Cal. 2d 240 (1969) ........................... 13

**STATUTES**

Cal. Civ. Code § 1643 ........................................................................................... 14

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Cal. Evid. Code § 623 ............................................................. 16

Cal. Gov't Code § 814 ............................................................. 18

Cal. Gov't Code § 815.2........................................................... 14

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# I.    INTRODUCTION

Defendant and Plaintiff agreed that if the latter helped them save a fortune, they would let him keep teaching. Exhibit A to the First Amended Complaint ("FAC") demonstrates that the Defendant communicated - throughout its entire constituency - that the contracts were authorized, and Plaintiff's performance was complete such that Defendant's past, continued, and projected performance could be acted upon. That is, to keep its promise to Plaintiff to allow him to continue teaching. Employees, students, and Plaintiff all relied on Defendant's position. In their 17-page Memorandum, Defendant failed to address the express writings showing that they had agreed to pay their share. ECF #33, 33-1. That's right – *nothing*. Rather than address the evidence of express authorization, Defendant ignored all of it, including all of Plaintiff's actions in reliance on Defendant, its various constituent schools such as Anderson and UCLA, the IT Department, and the course registrar. Defendant believes, apparently, that California law protects the massive confidence scam on all of its interested parties, including its students, by all of its interested parties because the statute that allows the university freedom to contract does not name the Plaintiff himself as someone with whom it can contract.

As for the discriminatory basis of Defendant's actions, here too they ignore the law.  The Defendant's agents knowingly acted in a matter forbidden by law because their desired basis to not promote Plaintiff was barred. Instead, they used Plaintiff's *Jewishness* to treat him in a manner it would not have treated others to get their desired-yet-wrongful result. Defendant's extra-pleading info (which, if used as Defendant suggests, convert this to a matter for summary judgment) demonstrate it.

Defendant's use of extra-pleading exhibits to bias the Court against Plaintiff is coupled with a misunderstanding of contract, tort, and *quantum meruit* law in California to hope the Court dismisses the action wholesale. Instead, Defendant's wrongful acts and breach, should be met with a denial of their motion.

## II.    ARGUMENT

A.  <u>FAC Discrimination Claims (I-IV) Allege Plausible Title VII and FEHA Claims Of Disparate Treatment Based On Plaintiff's Jewishness</u>

The FAC details the wrongful solicitation of, inclusion of, and reliance on the "FALSE REVIEW" (¶¶ 29-34) in Defendant's employment decision. The FALSE REVIEW was discriminatory in nature on its face, with two, separate, negative, references to Plaintiff's Jewishness lacking context to an educational setting. *Id.*  Its inclusion led to the Faculty Committee devolving into an "UNCOMFORTABLE WITH JEWS REVIEWS" fantasy (¶ 148(j)-(l)), whereby Plaintiff purportedly made an *invented* mass of students uncomfortable who then never left bad reviews, to explain the disproportionately excellent reviews for Plaintiff. Plaintiff alleges the Defendant thereby discriminatorily treated Plaintiff because of his Jewishness as they would not and have never treated any other similarly situated religious group (or national origin). FAC ¶ 35. Defendant's arguments do not address any of this but rather rely on one legal defense – other plausible explanations[1]. Defendant has two separate theories to support this defense, but both fail as a matter of law.

Defendant argues that where there is another plausible explanation[2] in the Complaint other than discrimination, the Court must deny the discriminatory bases alleged. ECF #33-1 pg. 15-16.  Defendant fails to cite any discrimination cases that support this proposition because that's not how the law works. First, the purported motivating factor offered by the FAC was that Defendant wished to preserve more classes for its tenured faculty in the face of deliberately lowering enrollment to

---

[1] Defendant's second reason, that Plaintiff has always been avowedly and openly Jewish - appears to be some sort of *laches* argument mixed with "but we hired you in the first place so we can't possibly have done something wrong later" defense. Neither is worth merit nor supported by law. It can't be addressed seriously.

[2] Defendant relies on *Orellanos* for this proposition, which was not a discrimination case.

boost rankings. *Id*. And the FAC does indeed allege that motivation. *Id.* (citing ECF #24 ¶ 143, 145). But in its memorandum, Defendant failed to address the intervening paragraph (¶ 144[3]) which shows that Defendant is *barred* from using a self-created student intake dilemma as a reason to deny Plaintiff's promotion by controlling contract.

The FAC then describes a host of bizarre actions taken to deny Plaintiff's promotion in the face his overwhelming success. ECF #24 ¶ 148. But, as noted above, these actions were only taken because of Plaintiff's *Jewishness*. The Defendant's assertion that this other "plausible explanation" fails as a matter of law. To defeat a discrimination claim, the other plausible reason must not only be non-discriminatory but must also be "legitimate." *EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (citing *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). Here, the FAC demonstrates that the reason was illegitimate in the face of the FAC allegations. Defendant was barred from it as a matter of law. So, they grabbed a *Jewishness*-based review (FALSE REVIEW) to deny the promotion. Defendant has not made a valid argument rooted in discrimination cases, nor can it.

Defendant next tries to give other "plausible" explanations by going outside the pleadings to include new documents. The Court need not question the existence of the documents, only for what they stand. As such, Defendant proudly uses them to rebut factual assertions in the FAC attempting to convert this matter to a summary judgment proceeding absent Plaintiff's ability to procure evidence[4]. ECF #34-1 pgs.

---

[3] "Defendant however was barred from answering 'Do We Need You' with a 'No; as much as it may have wanted to based on the NSF 18 CBA controlling language – the 19th Quarter hire had already happened." ECF # 24 ¶ 144 (referencing the explanatory ¶¶ 127-131).

[4] Plaintiff believes relying on the factual assertions inside these documents to rebut factual assertions in the FAC (rather than the mere inclusion of these documents for their uncontroverted existence) converts this matter to a Motion for Summary Judgment. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)

15-16. The Court must scrutinize documents incorporated by reference to keep from resolving factual issues. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Here, Defendants want the scrutiny for another reason. In a crass appeal to authority, it wishes the Court to believe the veracity of the contents of the exhibits to bias the Court against Plaintiff. The Court should treat the wrongful attempt to persuade it with the contents like the FAC describes the contents "nonsensical."

To its credit, Defendant has shared the standard Plaintiff must meet – Plaintiff must only provide a "plausible" explanation for discrimination. ECF #33-1 pg. 14. Defendant, relying on factual statements of opinion in incorporated documents, has decided for this Court that its explanations are "more plausible" and "most plausible." ECF #33-1 pgs. 15-16. Although the Court may appreciate Defendant's ruling on the matter in the Court's stead, Plaintiff need only provide a *plausible* explanation. Defendant's entire motion cannot find any implausibility in Plaintiff's claims, which are plausible on their face, but only wish that their new reasons are "more plausible" or even, "the most plausible.[5]" What Defendant really wants the Court to do is find Plaintiff's well-plead allegations "implausible" of its own accord, since Defendant's have not themselves don't dispute "plausible."

But even if the Court were to conduct a mini trial on the matter before it, Plaintiff would still win. Plaintiff's FAC alleges that the incorporated-by-reference documents only offer *pretextual* reasons which Plaintiff may rebut. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981) (the burden shifts to the Defendant to prove the non-discriminatory reasons); *Id*. at 253 *(*citing *McDonnell*

---

[5] Ironically, Defendant believes that Dean Bernardo's claim that Plaintiff lacked professionalism while facially relying on the FALSE REVIEW related to his *Jewishness* is non-discriminatory. That will be a matter for Dean Bernardo to explain under oath and the Court to determine factually. Had the Faculty Review and Dean Bernardo not relied on the FALSE REVIEW, Counts I-IV, would be weakened. But they did. And they said they did.

1  *Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)) (allows Plaintiff the opportunity

2  to rebut the Defendant's assertions). Plaintiff's FAC goes a long way towards

3  rebutting Defendant's assertions via the referenced documents. ECF #24 ¶ 33 (after

4  relying on the FALSE REVIEW, "Dean Bernardo's review is fantastical and

5  nonsensical and cannot be viewed with any meaning without the whole file."); ¶165-

6  166 ("Chairman Sood confirmed the general basis of the Faculty Review as having

7  been conducted inappropriately… counteract the effect of the FACULTY

8  REVIEW".); ¶ 173 ("Dean Bernardo continued bad faith behavior of

9  inventing…standards…Dean Bernardo's assessment ('COVER UP LETTER'), after

10  being hidden from Plaintiff, was more subterfuge…The list of obvious and self-

11  rebutting claims from Dean Bernardo's COVER UP LETTER is too long to analyze,

12  but is evident from the record of information he reviewed and referenced[6].")

13      In fact, the allegations in the FAC listed above, give more than enough

14  evidence (coupled with the full review file were Defendant courageous enough to

15  have included it[7]) to defeat even a Summary Judgment motion on the *pretextual*

16  basis of the Defendant's purported reasons. "[A] plaintiff's prima facie case,

17  combined with sufficient evidence to find that the employer's asserted justification is

18

19  _____

[6] One example is explicitly demonstrated when comparing Dean Bernardo's letter,

20  the Faculty Committee Review, and the statements of the Director and Dr. Olav

21  Sorenson in their written reviews and Dr. Sorenson's statements in the Faculty
Review.

22

23  [7] See *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988,  998 (9th Cir. 2018) ("the
unscrupulous use of extrinsic documents to resolve competing theories against the

24  complaint risks premature dismissals of plausible claims that may turn out to be
valid after discovery."); see also *United States v. Reese*, 666 F.3d 1007, 1019 (7th

25  Cir. 2012) ("A statement admitted on 'completeness' grounds must be connected

26  contextually to the previously introduced evidence, such that the exclusion of that
statement is likely to create an incomplete, misleading, or distorted picture of the

27  evidence."); see also *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996), as
amended (Oct. 21, 1996) (discussing the rule of completeness).

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1  false, may permit the trier of fact to conclude that the employer unlawfully

2  discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148

3  (2000). "A plaintiff may meet the burden to show pretext using either direct or

4  circumstantial evidence." *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090,

5  1094-95 (9th Cir. 2005); *Timmerman v. U. S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th

6  Cir. 2007) ("A showing of pretext does not require a plaintiff to offer any direct

7  evidence of actual discrimination.").

8        Discrimination cases are plead under Rule 8(a) – a simplified pleading

9  standard. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). Plaintiffs have

10  made a plausible claim for discrimination. Defendant tells this Court that, based on

11  what some of their people wrote ("look at it, here it is![8]"), that Plaintiff's detailed

12  allegations, including the pretextual basis of Defendant's writings should not be

13  considered when it must be even at summary judgment. Counts I-IV should proceed

14        B. Plaintiff And Defendant Entered Into A Valid Contract, Which Plaintiff

15            Performed, Defendant Recognized, Marketed, and Then Breached

16            *1. Plaintiff Alleges That The Contracts Were Duly Authorized And*

17                *Reduced To Writing Which Have Not Been Judicially Estopped*

18        Defendant claims Plaintiff does not allege an authorized contract and Plaintiff

19  should be judicially estopped from arguing that the contracts in question were not

20  oral contracts. Defendant says that the Plaintiff did not allege that the contracts were

21  authorized. ECF #33-1 pgs. 1, 3, 9, 11, 12. That's just false. ECF #24 ¶¶ 9, 25-26,

22  57, 160. 247, 253, 285, 288; Cf. ¶ 259 (pled in the alternative). Also, Defendant ask

23  the Court to ignore the common sense alleged – the Regents are constitutionally and

24  statutorily authorized to hire the very best of educators, such as Plaintiff. Also,

25  average ones. Defendant instead is suggesting that the Regents, who are *authorized*

26

27  _____

      [8] Defendant is trying to execute a common state-court maneuver - to get the paper in

28  front of the judge to sway his/her first impression.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

to contract, are also *not authorized* to contract with Plaintiff, or that Plaintiff must find out where the code lists his name, or his claims fail. That's not the FRCP 8(a) pleading standard. Plaintiff provides adequate proof that the contracts in question were performed and reduced to writing, so much so that Defendant's performance of the Contracts was broadcast between all of its constituents with the proper authorizations and even marketed to students. ECF #24-1. They were authorized.

Defendant's inappropriate reference to allegations in the original Complaint to declare oral contracts in the FAC misapplies the concept of judicial estoppel. ECF #33-1 pg. 11. Defendant shows a concerning misunderstanding of the law and the use of this Court's limited resources. Plaintiff's decision not to stand on the original complaint to allow the Court to hear the FAC in its stead cannot possibly prejudice Plaintiff's ability to re-plead under the concept of judicial estoppel as Defendant wishes. *Interstate Fire & Casualty Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998); *Masayesva v. Hale*, 118 F.3d 1371, 1382 (9th Cir. 1997) (judicial estoppel's application is limited to cases where the court relied on, or 'accepted,' the party's previous inconsistent position). This (or any other) Court here has not acted. Thus, judicial estoppel could not yet apply. If Defendant were allowed to prevail on the theory that repleading-as-result-of-conference invoked judicial estoppel, litigants would act in ways to further tax judicial resources to avoid that outcome. Defendant makes no direct citation to counter standing law; it shows Court its desired result[9], binding precedent ignored.

Defendant wishes the contract were oral so it could apply particular defenses. But that should not concern the Court given the allegations in the FAC and the results of Exh. A. E.g. ECF # 24 ¶¶ 157, 159, 235, 236, 238   ("reduced the agreement to a writing"; "The Defendant coordinated all of these activities through normal processes and procedures including the writings in Exhibit A which included

---

[9] This tactic again seems rather like state court practice.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

listing Plaintiff in their course directory out 1-2 years in the future even without APPOINTMENT)"; "Defendant reduced its obligations under the agreement and its intentions to writing"; "Defendant reduced to writing these intentions to fulfill its end of the contract"). What Defendant appears perturbed about is that the FAC does not state there was an oral contract. Nor should it. Plaintiff performed his obligations under the contract prior to the writings, such that the only parts left to write down were Defendant obligations which they both performed for years and wrote down. *Id.* The Defendant entirely controlled the length of the Contract because the Defendant controlled how long MGMT 169, at first an experimental course, would be offered. ECF #24 ¶ 76.  Even had they been as Defendant wished, oral contracts, once made are thereafter reduced to writings, which show a meeting of the minds. *McKeon v. Giusto*, 44 Cal. 2d 152, 158 (1955) ("It is not uncommon, however, for parties to make an oral agreement with the intention to reduce it to writing or supersede it by a new written contract"). Defendant printed its obligation for the world to see and rely. ECF #24-1. The factfinder deduces the rest. *McKeon* at 158. Here, a fact-accepter under FRCP Rule 12(b)(6) understands through the writings (and the allegations in the FAC) that Defendant had every intent for the contract to be immediately effective, particularly because it had been performed for years. Until it didn't. Although the writings in Exhibit A adequately demonstrate some writings, clearly the internal operations of Defendant will show even more as to how the entire university knew that Plaintiff was teaching for years into the future prior to the breach of the contract. ECF # 24-1. That's the purpose of discovery.

Defendant may prove, with evidence, that it was not an authorized contract or those that purported to be authorized were not authorized, but Plaintiff has met the pleading standard of an authorized contract is breached.

   2. *Even If The Contract Were Not Determined To Be In Writing At A Later Stage, Plaintiff's Contract Claims Would Survive Under An Implied-In-Fact Or Contract Completion In California Law*

1    Defendant rightly raises concerns of "oral contracts" being willy-nilly
2  enforced against public entities. The Court need not fear in this situation. *Implied-in-*
3  *fact* contracts can be applied against public entities. *Youngman v. Nevada Irrigation*
4  *District*, 70 Cal. 2d 240, 246-47 (1969). That includes Defendant, specifically.
5  *Requa v. Regents of University of California*, 213 Cal. App. 4th 213, 228 (2012). "In
6  pleading a cause of action on an agreement implied from conduct, only the facts
7  from which the promise is implied must be alleged." *Id.* They are alleged. And they
8  are evidenced in writings. ECF #24-1. And they were performed for years. ECF #24
9  ¶ 90, . The allegations in the above subsection, the terms of the contract, its
10  reduction in writing, the mass distribution of the Defendant's intention to pay, and
11  the promulgating of it to its own customers (the students) demonstrate that the
12  contract in question was indeed *implied-in-fact*. *Division of Labor Law Enforcement*
13  *v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 275 (1977) ("While an
14  express contract is defined as one, the terms of which are stated in words (Civ.
15  Code, § 1620), an implied contract is an agreement, the existence and terms of
16  which are manifested by conduct."). Defendant does not challenge the nature of
17  contract. Plaintiff has asked this Court to find an implied agreement (ECF #24 ¶
18  256). Both an implied agreement and promissory estoppel (*infra*) are factual matters
19  for the Court to determine. *Transpacific* at 279 ("the elements of an implied in fact
20  agreement and promissory estoppel call for factual determination and can be
21  adjudicated only on an ad hoc basis, by taking into consideration the peculiar facts
22  presented by the individual case.")

23    By Defendant's confusing tale, no authorized person authorized telling
24  Plaintiff, all departments, the IT staff, and the students that Plaintiff was being
25  offered the chance to teach absent anyone's authority to say so. The performance –
26  allowing Plaintiff to teach - was promulgated to the entire school through the course
27  system for as far out as the system showed courses, more than a year. ECF #24-1.
28  Coordination occurred throughout the various bodies. *Id.* Hirings were made. ECF

#24 ¶ 158€. These were reduced to writing after Plaintiff performed. ECF #24-1.
Well. ECF # 24 ¶ 19.  Defendant *performed for years*, unilaterally modified, and
expressed its continued obeisance to its obligations under the contract out to the
world. Students marched in protest when it was breached. ECF#24 ¶¶ 175-82. In
that scenario, the Court can 'fix it' and should. Cal. Civ. Code § 1643 ("A contract
must receive such an interpretation as will make it lawful, operative, definite,
reasonable, and capable of being carried into effect, if it can be done without
violating the intention of the parties.").When a contract of any type is performed for
years, its terms are deemed ascertainable to certainty, as here. *Dallman Co. v.
Southern Heater Co.*, 262 Cal. App. 2d 582, 587 (1968) ). The contracts breached
after Plaintiff's excellent performance. Count V should proceed.

   C. Defendant Has Misread The Law For Public Entity Tort Immunity With
      The Facts Alleged For Counts VI and VII.

      Plaintiff and Defendant conferred related to Count VI and Cal. Gov't Code §
815.2(a). ECF # 26 pg. 5. Defendant instead claims blanket immunity and does not
address the known exception Plaintiff shared in advance. ECF #33-1 (see pgs. 12-
13). Plaintiff has adequately alleged in Count VI that: "an act or omission of an
employee of the public entity within the scope of his employment if the act or
omission would…have given rise to a cause of action against that employee." The
immunity protection Defendant seeks for Count VI does not exist as allegations of
fraudulent inducement in Count VI fall outside of the ambit of misrepresentation,
which is read narrowly. *Michael J. v. Los Angeles County Department of Adoptions*,
201 Cal. App. 3d 859, 868 (1988) (citing *Johnson v. State of California*, 69 Cal. 2d
782, 780 (1968)). Defendant has waived any claim that the count otherwise fails or
that the employees would not be liable. A reply brief is not the venue for new
arguments. Count VI should proceed.

      As for Count VII Misrepresentation (where § 815.2(a) *would not apply*), the
FAC alleges the service involved is a public benefit – the provision of adoption

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

services or as in this case, the provision of higher education. In this scenario, typical tort immunity does not apply. *Michael J.* at 872 (immunities do not apply when the transaction is non-commercial and to "serve the interests of society"). The difference between an immune transaction is the provision of the public benefit – the provision of educational services – rather than economic damages. That is the key distinction.

The FAC seemingly spends in inordinate amount of time discussing the commercial, legal, advocacy, academic, and public service background of Plaintiff. ECF #24, *passim*. Plaintiff's allegations can lead to no other conclusion that the claims in Count VII are non-commercial for two reasons. First, Plaintiff's footprint and allegations are congruent. An attorney who spends his practice in volunteer work for judicial reform – like it or not – is not first and foremost "commercially-minded."[10] Defendant even acknowledged it - slotting him to teach and make rigorous their own Social Entrepreneurship offering. ECF #24 ¶¶ 150-52. Second, Plaintiff's alleged commercial success, legal professional accomplishments, media notoriety, and academic pursuits, lead to the conclusion that he may have other commercial opportunities – less public interest minded – to fill his time. His provision of the public interest good is non-commercial in nature. Defendant simply ignores this commercial and non-commercial distinction (even with advance notice), claiming blanket immunity from common law torts.

Here, the issue for the Court to determine is a factual one – was the service provided for a public benefit as alleged in the FAC (some 20+ times in various ways). Another way to look at it is with the prayer for relief. Does providing the public benefit of education as redress (say, instead of damages) solve the issue? The FAC's prayer for relief lays out precisely non-economic, public benefit/interest

---

[10] Plaintiff coined the legal profession's (and judiciary's) treatment of judicial reform: "The one area of practice a lawyer is paid not to do."

1    remedies ECF #24 pgs. 51-52 ((E), (F), (I)). It's a factual issue the Defendant has

2    otherwise waived at this stage (again). Count VII should proceed.

3           D. Equitable Estoppel Can Be A Standalone Basis For Relief But Otherwise

4              The FAC Adequately Pleads Promissory Estoppel.

5           Defendant claims *equitable estoppel*[11] - listed in the header of Count VIII - is

6    not a standalone count. Courts do recognize it, including the same appellate court

7    that says it does not exist. See *Krolikowski v. San Diego City Employees' Retirement*

8    *System*, 24 Cal. App. 5th 537, 567 n.21 (2018); also see *Hill v. Kaiser Aetna,* 130

9    Cal. App. 3d 188, 191 (1982) ("we conclude that estoppel by conduct is a proper

10   theory upon which to find entitlement for a bonus."); *Porporato v. Devincenzi*, 261

11   Cal. App. 2d 670, 678-79 (1968); Cal. Evid. Code § 623. Federal courts examine

12   standalone equitable estoppel state law claims in California too without existential

13   dismissals. See *Bay Area Surgical Mgmt., LLC v. Principal Life Ins. Co.*, No. 5:12-

14   CV-01140 EJD, 2012 WL 4058373 (N.D. Cal. Sept. 14, 2012) (dismissed on other

15   grounds, while fully examined as a valid claim). However, even if it were not a

16   standalone count, the principles of estoppel by conduct apply to the very same

17   contract arguments Defendant is making throughout the Memorandum. And should

18   the Court not allow Count VIII to stand alone, it should clearly apply its unrebutted

19   arguments and §623 to Defendant's claims therein.

20          But Count VIII should stand for a more obvious reason. It pleads *promissory*

21   estoppel. "A promise which the promisor should reasonably expect to induce action

22   or forbearance of a definite and substantial character on the part of the promisee and

23   which does induce such action or forbearance is binding if injustice can be avoided

24   only by enforcement of the promise." *Hilltop Properties, Inc. v. State*, 233 Cal. App.

25   2d 349, 362 (1965).  "[C]ourts are given wide discretion in its application." *US*

26   *Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 888 (2005). It's pled

27

28   [11] Also known as *estoppel by conduct*.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

element by element. *Id.* at 901. In this case, for *promissory estoppel* not to be

enforceable against Defendant, it would have to allege that everyone in the

university who performed under the contract for years, then published and

advertised Defendant's future performance and Plaintiff's future teaching at the

university were part of a grand illegal conspiracy. *Hilltop Properties,* at 365

("promissory estoppel may be invoked against a governmental body where it would

not…result in the indirect enforcement of an illegal contract.")

The pleading standards do nott require the level of precision that Defendant

now suggests they need. "Having informed the [Defendant] of the *factual* basis for

their complaint, they were required to do no more to stave off threshold dismissal

for want of an adequate statement of their claim." *Johnson v. City of Shelby*, 574

U.S. 10, 12 (2014) (reversing a dismissal when the Plaintiff failed to name the

correct basis for the claim). Courts in the Ninth Circuit can discriminate between the

two estoppels as can officers of its courts – Defendant's attorneys. E.g. *Jablon v.*

*United States*, 657 F.2d 1064, 1069 (9th Cir. 1981) (the 'estoppel' of which he

speaks is promissory estoppel. The equitable 'estoppel' cases he cites are

inapposite."). Other courts understand estoppel confusions finding "mislabeling of

the claim does not bar [the] court's further consideration." E.g. *Larsen v. AirTran*

*Airways, Inc.*, 2009 U.S. Dist. LEXIS 116045, *40, 2009 WL 4827522[12]. Finally,

---

[12] In footnote 18, the *Larsen* case notes that Count III was brought for promissory
estoppel. However, it appears to have been wrongfully mislabeled as a state claim
for equitable estoppel. The court easily managed it (and even did a federal common
claim analysis as well). In a matter of coincidence, the Court cites a United States
Supreme Court case argued (and won 9-0) by Plaintiff's father, S. Sheldon
Weinhaus (who passed in 2021). *Larsen* at *40 (citing *Geissal v. Moore Med. Corp.*,
524 U.S. 74 (1998). The case has little relevance to this matter but for the fact that
Plaintiff taught with his father's strategy (the inimitable S. Sheldon Weinhaus 1931-
2021) for that case for the Defendant's and its student's benefit. See
https://www.dropbox.com/scl/fi/7mgzr54cqhrh3wvm656b1/Sheldon_Weinhaus_Su
preme_Court_over_500.mov?rlkey=4gjutl7v0nlwiab5vp1qlnuca&dl=0 (last visited

the broad prayer for equitable relief in the FAC allows the Court to consider either (or both) theories as appropriate here, with the Defendant having plenty of notice.

Count VIII should proceed as a standalone estoppel claim (promissory) *and* the Defendant's should be estopped by conduct from arguing no contract exists.

E. <u>The Unjust Enrichment Count Should Survive Because Defendant Has Failed To Show There Are No Methods By Which Plaintiff Can Prevail And The FAC Requests All Non-Monetary Equitable Remedies</u>

An unjust enrichment claim prevents an injustice. "The underlying idea behind *quantum meruit* is the law's distaste for unjust enrichment. If one has received a benefit which one may not justly retain, one should 'restore the aggrieved party to his [or her] former position by return of the thing or its equivalent in money.' *Maglica v. Maglica*, 66 Cal. App. 4th 442, 449 (1998) (citation omitted). California courts allow *quantum meruit* against public entities. *County of Santa Clara v. Superior Court* 14 Cal.5th 1034, 1047 (2023). Defendant cannot cover all defenses and thus cannot rule out *quantum meruit*.

Count IX for Unjust Enrichment should proceed for another, more mundane reason. It will not challenge the Court to surmise from the FAC or the request for remedies[13] that Plaintiff wants to provide the public benefit of education promised him by Defendant. Government immunities as such simply do not apply to non-monetary relief. Cal. Gov't Code § 814[14] ("Nothing in this part affects liability based

_____

5/21/25) ("No Matter How Little It Is, We Are Going To The Supreme Court If Necessary")

[13] Defendant spends time in its brief in a pointless endeavor to specifically strike punitive damages which were conditioned by "where permitted by law." Plaintiff's FAC also asks for "just and proper" legal relief. None of this is affected by Defendant's premature look at damage types available, when that also includes granting Plaintiff the opportunity to teach again. ECF # 24 pgs. 51-52.

[14] This statutory framework is important to understand for the distinction in Count

on contract or the right to obtain relief other than money or damages against a public entity or public employee."). Count IX for Unjust Enrichment should proceed.

### III.    CONCLUSION

For the reasons stated above, Plaintiff requests the Court to deny the Motion, or to convert the motion to a summary judgment proceeding, or grant Plaintiff leave to otherwise amend.

Dated:  May 23, 2025                    Plaintiff in Pro Per


By:    ___/s/Edward "Coach" Weinhaus/s/___
EDWARD "COACH" WEINHAUS, ESQ
Plaintiff
CA BAR# 330344

---

VII's discussion of relief.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1
2

**CERTIFICATE OF SERVICE**

3          I, Edward "Coach" Weinhaus, certify that on May 23, 2025, I served a copy

4    of this Unopposed Motion to Reschedule Hearing on all parties or their counsel of

5    record via CM/ECF addressed as follows:

6          Matt Burris | Attorney
           matt.burris@quarles.com | D. 619-243-0892
7          Quarles & Brady LLP
           101 West Broadway, Suite 1500
8          San Diego, CA 92101
9

10                              /s/Edward "Coach" Weinhaus/s/
                                EDWARD "COACH" WEINHAUS, ESQ Plaintiff
11                              CA BAR# 330344

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT