SANDRA L. McDONOUGH (SBN 193308)
sandy.mcdonough@quarles.com
MATTHEW W. BURRIS (SBN 325569)
matt.burris@quarles.com
KELLY M. BUTLER
kelly.butler@quarles.com
**QUARLES & BRADY LLP**
101 West Broadway, Suite 1500
San Diego, California 92101
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD "COACH" WEINHAUS,<br><br>Plaintiff,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant. | Case No. 2:25-cv-00262 JFW (ASx)<br><br>**PROPOSED STATEMENT OF DECISION IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge:       John F. Walter<br>Mag. Judge:  Alka Sagar<br>Crtrm.:       7A<br>Trial Date:   Not Set |

On January 10, 2025, Plaintiff Edward Weinhaus filed his initial complaint. On May 1, 2025, Plaintiff filed his First Amended Complaint. ("FAC" [ECF No. 24].) On May 15, 2025, Defendant The Regents of The University of California filed a Motion to Dismiss the FAC pursuant to Rule 12(b)(6) ("Defendant's Motion" [ECF No. 33].) On May 23, 2025, Plaintiff filed his Opposition ("Opposition" [ECF No. 37].) On June 2, 2025, Defendant filed its Reply ("Reply" [ECF No. 44].) After considering the moving, opposing, and reply papers, the Court **GRANTS** Defendant's Motion for the reasons stated below.

## I.     FACTUAL BACKGROUND

Plaintiff's FAC alleges Weinhaus was employed by The Regents as a lecturer at UCLA from August 1, 2016 through December 31, 2022. (FAC, ¶ 17.) His employment was subject to a Collective Bargaining Agreement ("CBA") between Non-Senate Faculty (Unit 18) and The Regents. (*Id.*) As part of this CBA, Weinhaus taught courses pursuant to "appointments," which UCLA largely controlled. (*Id.*, ¶ 58.) UCLA was not obligated to appoint Plaintiff to any courses, or to continue Plaintiff's appointment of any course. (*Id.*, ¶ 58(a)-(c).)

### A.     The Alleged MGMT 169 Contract - 2018

Plaintiff alleges that, in 2018, he entered into a verbal contract with Dr. Al Osborne, former Director of the Price Center for Entrepreneurship & Innovation at the UCLA Anderson School of Management. (*Id.*, ¶¶ 71-77.) As part of this oral contract (the "MGMT 169 Contract"), Weinhaus claims Dr. Osborne promised he would be able to teach a particular class, MGMT 169, once the class was approved, for as long as it was offered, if Dr. Osborne found his teaching skills satisfactory. (*Id.*, ¶¶ 74, 76.) Weinhaus does not allege Dr. Osborne was authorized to enter into any contract on behalf of The Regents; he alleges only that The Regents' unidentified "actions confirmed" he was so authorized, and that this authority was "confirmed…on a call." (*Id.*, ¶ 160.)

### B.     The Alleged January 2023 Contract

Plaintiff alleges that, in January 2023, he entered into another oral contract, this time with an unidentified "Director." (*Id.*, ¶¶ 152, 156.) As part of this oral contract, Weinhaus claims the Director promised he would teach a Social Entrepreneurship course. (*Id.*, ¶ 152.) Weinhaus alleges he agreed to do so under certain conditions, (*Id.*, ¶ 154), and that the Director accepted these conditions. (*Id.*, ¶¶ 156, 158.) Weinhaus does not allege the Director was authorized to enter into any contract with Weinhaus on behalf of The Regents; he alleges only that the Director's authority was "confirmed…on a call." (*Id.*, ¶ 160.)

### C. Weinhaus Seeks Appointment As An Initial Continuing Lecturer And Is Denied

#### 1. Despite multiple concerns, an ad hoc review committee recommends appointing Weinhaus

During 2022, The Regents provided Weinhaus with an Excellence Review, to determine if he would be appointed to Initial Continuing Lecturer. (FAC, ¶ 146.) First, a three-person ad hoc committee reviewed his dossier. (Declaration of Matthew Burris ("Burris Decl."), Ex. A.) The ad hoc review committee recommended Weinhaus' appointment as an Initial Continuing Lecturer despite several concerns about the lack of rigor in Plaintiff's courses, lack of organization, and a perceived lack of professionalism in his interactions with students. (*Id.*, 2-3.) One student reviewer submitted a letter not recommending Weinhaus' continued appointment, commenting that Weinhaus:

> [M]ade everyone call him "coach" . . . and referred to himself frequently as "the hardest drinking Jew in Chicago". He also taught every lesson about integrity or morality through Old Testament examples and expected us to apply….biblical stories to our internship experiences. His class was entertaining for the sheer ridiculous nature of it, but it took hours of lecture time that added no value.

3
PROPOSED STATEMENT OF DECISION IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

(Burris Decl., Ex. A, 4; *compare* FAC, ¶ 30(a)-(b).)

### 2. The Department Committee rejects the recommendation and votes against appointing Weinhaus

Afterwards, the Management Department Committee reviewed Plaintiff's application for appointment to Initial Continuing Lecturer. Forty-five faculty members reviewed Weinhaus' dossier and met on December 2, 2022, to discuss it. (Burris Decl., Ex. B, 1.) On December 15, 2022, the Department Committee issued its report, which did not refer to or mention Weinhaus' ethnicity, and found that Weinhaus' biblical references in class "did not appear to be an issue." (*Id.*, 3.) Rather, the faculty on the Department Committee "were very critical [of Weinhaus], referring to a lack of rigor in the courses, lack of content, lack of organization, and lack of professionalism." (*Id.*) The Department faculty voted against Weinhaus' appointment by a tally of 34-9. (*Id.*, 1.)

### 3. The Dean affirms the Department Committee's decision

On February 16, 2023, Dean of the UCLA Anderson School of Management, Antonio Bernardo, issued a final decision, declining to appoint Weinhaus as an Initial Continuing Lecturer, which had the effect of ending his employment at UCLA. (Burris Decl., Ex. C.) Before determining that Weinhaus' performance did not meet the standard of excellence, Dean Bernardo reviewed the Department Committee report referenced above, Weinhaus' response to that letter, and conducted an independent assessment into the strengths and weaknesses of Weinhaus' teaching record. (*Id.*, 1.) In doing so, he noted two main concerns: a lack of rigor in Weinhaus' courses, and student complaints about Weinhaus' abrasiveness, insensitivity, and lack of professionalism. (*Id.*, 1-2.) Dean Bernardo concluded, "In sum, Mr. Weinhaus' teaching record has clear strengths, but concerns about the rigor of his courses, his professionalism and the learning environment in his classroom, and his failure to address these concerns, are important and valid. Taken together, these factors indicate that Mr. Weinhaus does

not meet the high standard of 'excellence' required . . ." (*Id.*, 2.) Dean Bernardo's letter does not reference Weinhaus' ethnicity or any in-class biblical references.

Notably, Weinhaus claims he was denied an appointment to an Initial Continuing Lecturer position, for nondiscriminatory reasons, because UCLA wanted to strategically increase its rankings by having a more accomplished but smaller student body and this strategy "would mean fewer classes for the tenured faculty to teach, who were also contractually guaranteed teaching positions" and "fewer classes would be available for the existing faculty if they were to grant" the promotion. (FAC, ¶ 143.)

## II.  LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Med. Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Tech.*, 922 F. Supp. at

304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

In considering Defendant's Motion, the Court may consider the copies of ad hoc review committee memorandum (ECF No. 34.1), the Department Committee memorandum (ECF No. 34.2), and Dean Bernardo's final decision letter (ECF No. 34.3) filed concurrently with The Regent's moving papers because each is relied upon, and incorporated by reference into the FAC. (FAC ¶¶ 29, 32, 33, 34, 35, 98, 131, 133, 135, 145, 148, 167 n.3, 173, 174, and 203.) *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court faced with a motion challenging the sufficiency of the pleadings "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference"); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("incorporation by reference" doctrine permits courts to consider documents on which "the plaintiff's claim depends" and documents "whose contents are alleged in a complaint" without converting a motion to dismiss to a motion for summary judgment (citations omitted)); see also, *U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III. DISCUSSION

#### A. Weinhaus' Contract-Based Claims Fail As A Matter of Law

The Regents argue that Plaintiff's contract claims, the Fifth through Ninth

causes of action in the FAC, should be dismissed for any of three reasons: (1) as a public employee, Weinhaus' employment was governed by statute, not by contract; (2) oral contracts are not enforceable against the Regents; (3) Weinhaus did not establish that Dr. Osborne or "the Director" were authorized to enter into any employment contracts with him. The Court considers each of these in turn.

### 1. Weinhaus' employment was governed by statute

The Regents is a public entity that governs the University of California system, which in turn is created under Article IX, section 9 of the California Constitution. Cal. Const. Art. 9, § 9; *De Vries v. Regents of Univ. of Cal.*, 6 Cal.App.5th 574, 587 (Cal. Ct. App. 2016); Cal. Gov. Code § 811.2 ("'Public entity' includes…the Regents of the University of California…").

It "is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law." *Miller v. State of Cal.*, 18 Cal.3d 808, 813-814 (Cal. 1977) (citations omitted); s*ee* Cal. Gov. Code §§ 3505, 3505.1; *Retired Employees Assn. of Orange County, Inc. v. County of Orange*, 52 Cal.4th 1171, 1182 (Cal. 2011). The California Government Code expressly authorizes public employment to be governed by collective bargaining agreements, but not private agreements. Cal. Gov. Code §§ 3505, 3505.1; *Retired Employees Assn.,* 52 Cal.4th at 1188 (Cal. 2011); *Grasko v. L.A. City Bd. of Educ*., 31 Cal.App.3d 290, 303-04 (Cal. Ct. App. 1973). Courts, therefore, may dismiss a public employee's breach of contract claims, and any claims based on the existence of an individual employment contract. *Kemmerer v. City of Fresno*, 200 Cal.App.3d 426 (Cal. Ct. App. 1988); *Watson v. State of Cal. Dep't of Rehab.*, 212 Cal.App.3d 1271, 1287-88 (Cal. Ct. App. 1989).

It is clear that Weinhaus attempts to claim the existence of individual employment contracts with The Regents. His fifth cause of action alleges The

7

Regents breached both contracts, and his sixth through ninth causes of action allege quasi-contractual theories based on the same.  However, Weinhaus was a public employee and therefore these two alleged oral contracts could not govern his employment under the law cited above.  His Fifth through Ninth causes of action are accordingly dismissed.

### 2. Oral contracts with public entities are unenforceable

Even if Weinhaus could establish that his employment was governed by an individual contract, "an oral promise cannot be enforced against a government agency." *Orthopedic Specialists of S. Cal. v. Public Employees' Retirement Sys.*, 228 Cal.App.4th 644, 650-51 (Cal. Ct. App. 2014).

As described in the FAC, the contracts Weinhaus seeks to enforce are clearly oral in nature.  (FAC ¶¶ 72, 74, 150.)  Further, he described the same exact contracts as oral in his initial Complaint.  (See Compl., ¶¶ 201 ("The Plaintiff and Defendant entered into an oral contract…"); 215 ("Plaintiff and Defendant entered into another oral contract…") [ECF 1].)  He is not permitted to argue they are not oral now.  *See New Hampshire v. Maine*, 531 U.S. 742, 749-50 (judicial estoppel prohibits "parties from deliberately changing positions according to the exigencies of the moment").

Accordingly, Plaintiff's Fifth through Ninth causes of action additionally fail because each is based on the alleged breach of an oral contract.  *Orthopedic Specialists of S. Cal.*, 228 Cal.App.4th at 650-51 (sustaining demurrer without leave to amend); *Pasadena Live v. City of Pasadena*, 114 Cal.App.4th 1089, 1094 (Cal. Ct. App. 2004) (sustaining demurrer of public employee's contract claim "because it was based on an oral contract."); *Doe v. Regents of the Univ. of Cal.*, 672 F.Supp.3d 813, 822 (N.D. Cal. 2023) (granting motion to dismiss unjust enrichment claim with prejudice in part because it was based on oral contract).

Weinhaus' attempt to characterize Exhibit A to the FAC as proof of a written contract misses the mark.  (FAC, ¶¶ 235, 236.)  Exhibit A does not include any of the terms he claims exist in the FAC.  And, as noted above, it could not provide any

basis to find an individual employment contract, because those contracts are not permitted for public employees. For this additional reason, Weinhaus' Fifth through Ninth causes of action are dismissed.

### 3. Weinhaus' has failed to establish that any alleged contracts were authorized and thus unenforceable against The Regents

Weinhaus alleges he entered into oral contracts with "head of the Price Center of UCLA Anderson" Dr. Al Osborne, and the "Director of the UME program," which were binding on The Regents. (*See* FAC., ¶¶ 74, 152, 156.) However, in support of this purported binding authority, Weinhaus alleges only that The Regents' "actions confirmed that the DIRECTOR and the Price Center had the authority to contract with Plaintiff outside the CBA," and that it confirmed this authority "on a call during Winter 2023 Quarter on or about February 17, 2023, less than a week before the adverse action." (*Id.*, ¶ 160.) Weinhaus does not otherwise identify any constitutional or statutory provision showing Dr. Osborne or the Director were authorized to enter into contracts on behalf of The Regents. (*See, e.g.*, FAC, ¶¶ 9, 285.)

Based on the foregoing principles, neither Dr. Osborne nor the Director would have been authorized to enter into any individual employment contracts or oral contracts with Weinhaus and the FAC does not suggest otherwise. "[N]o contractual obligation may be enforced against a public agency unless it appears the agency was authorized by the Constitution or statute to incur the obligation; a contract entered into by a governmental entity without the requisite constitutional or statutory authority is void and unenforceable." *White v. Davis*, 30 Cal.4th 528, 549 (Cal. 2003) (citations omitted); *Air Quality Products, Inc. v. State of Cal.*, 96 Cal.App.3d 340, 349 (Cal. Ct. App. 1979). For this additional reason, Weinhaus' Fifth through Ninth causes of action are dismissed.

### B. Weinhaus' Common Law Claims Fail As A Matter Of Law

The Regents argue that Weinhaus' claims for fraudulent inducement,

misrepresentation, and unjust enrichment (the sixth, seventh, and ninth causes of action) fail because under California's Government Claims Act, The Regents are immune from common law claims.

### 1. Fraudulent Inducement (Sixth Cause of Action)

As a starting point, The Regents are immune from Weinhaus' common law claims. Cal. Gov. Code § 815(a); Cal. Gov. Code § 818.8; *Colome v. State Athletic Comm. of Cal.* 47 Cal.App.4th 1444, 1454 (Cal. Ct. App. 1996); *In re Groundwater Cases*, 154 Cal.App.4th 659, 688 (Cal. Ct. App. 2007) ("Of course there is no common law tort liability for public entities in California; such liability is wholly statutory."); *County of Santa Clara v. Sup. Ct.*, 77 Cal.App.5th 1018, 1028 (Cal. Ct. App. 2022) ("Section 815 immunizes public entities from liability on common law theories."); *Thomas v. Regents of Univ. of Cal.*, 97 Cal.App.5th 587, 639-41 [explaining misrepresentation immunity and collecting cases]. Weinhaus argues that his fraudulent inducement claim can still stand, because The Regents is vicariously liable under California Government Code section 815.2(a) ("Section 815.2(a)"). Plaintiff is mistaken.

First, The Regents is immune from this claim under California Government Code section 818.8 ("Section 818.8"). "California law recognizes several categories of fraud. . . . The courts have assumed that the immunity [provided by Sections 818.8 & 822.21] includes all types of fraud and deceit cases . . ." *Thomas v. Regents of Univ. of Cal.*, 97 Cal.App.5th 587, 638 (Cal. Ct. App. 2023); *Nuveen v. Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1127 (9th Cir. 2013) (public entity properly invokes Section 818.8 in response to fraud claim); *Burden v. County of Santa Clara*, 81 Cal.App.4th 244, 253 (Cal. Ct. App. 2000) (the Government Claims Act "clearly provides that even in cases in which the public employee is liable for actual fraud, the public entity is immune.").

Second, Weinhaus has not satisfied the pleading requirements for vicarious liability in light of the Government Claims Act's broad immunities. *See* Gov't Code

§§ 815, 815.2; *Eastburn v. Reg'l Fire Prot. Auth.,* 31 Cal.4th 1175, 1179-80 (Cal. 2003); *Cochran v. Herzog Engraving Co.*, 155 Cal.App.3d 405, 410, n. 2 (Cal. Ct. App. 1984).  To plead fraudulent inducement under California law and Federal Rule of Civil Procedure 9(b), "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Navarro v. Sage Point Lender Servs., LLC*, 14-4585, 2014 WL 12603214, at *2 (C.D. Cal. Aug. 12, 2014).  These specific facts must establish "(1) a false representation of a material fact, (2) knowledge of its falsity, (3) intent to defraud, (4) actual and justifiable reliance, and (5) resulting damage." *Id.* at *3.  To successfully allege a claim against an entity, Weinhaus must allege "the names of the persons who allegedly made the fraudulent representation, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Id.*  He "must not only specify how alleged statements were false, but must specify how statements were false when they were made." *Id.*

To establish vicarious liability of The Regents, Weinhaus must allege facts establishing a specific employee is liable for fraudulent inducement, no immunity applies, and the employee's conduct was within the course and scope of his employment.  *Yee v. Superior Court*, 31 Cal.App.5th 26, 40 (Cal. Ct. App. 2019) ("Vicarious liability depends on the employee being independently liable for the act, the entity becoming liable because the employee's act was taken within the scope of his or her employment."); *Masters v. San Bernardino County Employees Ret. Ass'n*, 32 Cal. App. 4th 30, 42 (Cal. Ct. App. 1995) (in addition to claim elements, plaintiff "must allege . . . motivation by corruption or actual malice."); *Zelig v. County of L.A.,* 27 Cal.4th 1112, 1130-31 (Cal. 2002); *Cochran*, 155 Cal.App.3d at 410, n. 2.

The FAC does not allege facts demonstrating the elements of a fraudulent inducement claim, that "the Director" or Dr. Osborne is independently liable, that either are not entitled to immunity, or that either's act was taken within the course and scope of their employment.  *Yee*, 31 Cal.App.5th at 40; *Zelig*, 27 Cal.4th at

1130-31; *Cochran*, 155 Cal.App.3d at 410. Similarly, the FAC does not include specific facts as to the dates, times, places, benefits received, or other details of the alleged fraudulent activity. (*See* FAC ¶¶ 74-76, 81, 114, 156-57, 160, 263, 265-66.) The FAC does not name "the Director," provide details of the Director's or Dr. Osborne's authority to offer Weinhaus continued employment, allege the content of their statements, or allege either the Director or Dr. Osborne made any statements with knowledge of their falsity with the intent to defraud Weinhaus. *See Navarro*, 2014 WL 12603214, at *3. With these critical elements missing, the facts as alleged are insufficient to circumvent The Regents' immunity in Section 815(a), and Weinhaus' fraudulent inducement claim is dismissed.

### 2. Misrepresentation Claim (Seventh Cause of Action)

Under Section 818.8, neither The Regents nor any of its employees can be liable to Weinhaus for the claim of misrepresentation alleged in the FAC. *Nuveen Mun. High Income Opp. Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1124-25 (9th Cir. 2013). Misrepresentation immunity applies to cases involving many types of financial interests, including "misrepresentations concerning terms of employment . . ." *Thomas v. Regents of Univ. of Cal.,* 97 Cal.App.5th 587, 640-41 (Cal. Ct. App. 2023) (collecting cases). In attempting to avoid this rule, Weinhaus makes the novel argument that his employment with The Regents was not in the nature of a commercial transaction (where one works for compensation), but rather that his employment was a "social service" he provided in exchange for the opportunity to continue teaching more classes at UCLA. (Opp'n, 16:7-20.) Plaintiff's argument is specious, and rejected. This cause of action is dismissed.

### 3. Weinhaus' unjust enrichment claim additionally fails

"It is settled that 'a private party cannot sue a public entity on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations.'" *Katsura v. City of San Buenaventura*, 155

Cal.App.4th 104, 109-10 (Cal. Ct. App. 2007) (citing *Janis v. Cal. State Lottery Com.*, 68 Cal.App.4th 824, 830 (Cal. Ct. App. 1998). Specifically, a "plaintiff cannot sustain a claim against UC Regents for unjust enrichment." *Doe v. Regents of the Univ. of Cal.*, 672 F.Supp.3d 813, 822 (N.D. Cal. 2023) (sustaining motion to dismiss unjust enrichment claim against The Regents). This is particularly true if the contract is an oral one. (*See Pasadena Live,* 114 Cal.App.4th at 1094 (sustaining demurrer to unjust enrichment claim based on oral contract).)

In his Opposition, Weinhaus argues that The Regents' immunity does not apply when a plaintiff is not seeking damages and seeks only to compel a public entity to comply with a duty under a detailed statutory framework. (Opp'n, 19:19-20:2 [citing Section 814] and *County of Santa Clara v. Superior Court*, 14 Cal.5th 1034 (Cal. 2023).) However, the FAC identifies no applicable statutorily mandated scheme providing him any right to seek recovery from The Regents, and he does seek damages. (FAC, p. 51.) Accordingly, this claim is dismissed.

### 4.   No Cause of Action Exists for Equitable Estoppel

Under California law, a "stand-alone cause of action for equitable estoppel will not lie as a matter of law." *Behnke v. State Farm Gen. Ins. Co.*, 196 Cal.App.4th 1443, 1463 (Cal. Ct. App. 2011).

In his Opposition, Weinhaus concedes the failure of his equitable estoppel claim (Opp'n, 19:3-4) and this claim is accordingly dismissed with prejudice. Weinhaus also seeks to replace his claim of equitable estoppel with one for promissory estoppel. (Opp'n, 17:20-19:4.) While normally the Ninth Circuit encourages liberal amendment of a pleading, it would be futile here. Even if Weinhaus amended his complaint, a claim for promissory estoppel would still fail as a matter of law because as referenced above, there is no valid contract to which the theory could be applied. This claim is dismissed for this additional reason.

### C.   WEINHAUS' FAILS TO PLEAD DISCRIMINATION

Weinhaus brings four claims for discrimination based on his religious beliefs

and Jewish ethnicity: two under 42 U.S.C. § 2000e-2(a)(1) (Title VII) and two under Cal. Gov. Code § 12940(a) (FEHA). Each of these claims require him to plead facts sufficient to support an inference that his termination was due to his religion and/or ethnicity. *See Whitehead v. Pacifica Senior Living Mgmt. LLC*, No. 21-15035, 2022 WL 313844, at *2 (9th Cir. Feb. 2, 2022) (holding district court properly granted motion to dismiss where plaintiff failed to plead sufficient facts). This inference must be "plausible," more than merely "possible[,]" *Iqbal*, 566 U.S. at 678, and "[w]hen considering plausibility, courts must also consider an obvious alternative explanation for defendant's behavior." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014.)

Weinhaus has not and cannot allege facts sufficient to support a plausible inference of discrimination. His discrimination claims are based entirely on his allegation that he was not appointed to an Initial Continuing Lecturer position, and thus his employment at UCLA ended because the Department Committee determined he did not meet the required performance standard. (FAC, ¶¶ 29, 145.) According to Weinhaus, his entire performance review was improper because a student complained that Weinhaus referred *to himself* frequently as "the hardest drinking Jew in Chicago," and "taught every lesson about integrity or morality through Old Testament examples." (*Id.*, ¶ 30.) This theory of discrimination fails for multiple reasons.

First, despite the allegations in the FAC otherwise, the contents of the ad hoc committee report, the Department Committee report, and Dean Bernardo's final decision letter do not suggest any decisions were based on ethnicity or religion. The Department Committee report makes zero references to his ethnicity and concludes that his biblical references "did not appear to be an issue." (Burris Decl., Ex. B.) Rather, the Department Committee did not recommend that Weinhaus be appointed as an Initial Continuing Lecturer because students reported experiencing "a lack of rigor in the courses, lack of content, lack of organization, and lack of

14

professionalism" in his courses. (*Id.*, p. 3.) Dean Bernardo – the final decision maker – concurred with this assessment. Dean Bernardo's report makes no mention of Weinhaus' ethnicity or religion.

Second, this theory of discrimination is contradicted by other allegations in his FAC. For example, Weinhaus alleges he had been employed by The Regents since 2016, and his "educational and professional accomplishments were always combined with his leadership in and prolific advocate of Jewish life." (*Id.*, ¶¶ 17, 137.) Without more, this five year relationship suggests the decision not to appoint Weinhaus as an Initial Continuing Lecturer was based on valid, nondiscriminatory criteria. In addition, Weinhaus alleges a more plausible, and nondiscriminatory alternative explanation for his non-appointment in the Complaint—that The Regents were motivated to appoint fewer Initial Continuing Lecturers so there would be more courses for tenured faculty to teach. (*Id.*, ¶¶ 143, 145.) Because the FAC itself undermines Plaintiff's theory of the case, Plaintiff has rendered these claims implausible. *Orellana v. Mayorkas*, 6 F.4th 1034, 1043-44 (2021).

Taking his allegations in the light most favorable to him, the most the FAC alleges is that Weinhaus experienced an adverse employment action *and* he is Jewish, but not that he experienced an adverse employment action *because* he is Jewish. He admits The Regents had an obvious, nondiscriminatory alternative explanation, and provides no record that a decisionmaker considered the student comment on statements Weinhaus made about his own drinking habits during classes (which Weinhaus does not deny). Thus, the FAC "stops short of the line between possibility and plausibility." *Twombly,* 550 U.S. at 557. Weinhaus' first through fourth claims are dismissed as a result.

### D. The Prayer for Punitive Damages is Dismissed.

Weinhaus seeks "punitive damages where permitted by law, in an amount sufficient to punish and deter" The Regents' conduct.

Under California Government Code section 818, "a public entity is not liable"

for punitive damages, "or other damages imposed primarily for the sake of example and by way of punishing the defendant." Cal. Gov. Code § 818. Similarly, Section 1983 of the United States Code does not allow for punitive damages against public entities, who are immune as a matter of federal law. 42 U.S.C.A. § 1983; *S.T. by and through Niblett v. City of Ceres*, 327 F.Supp.3d 1261, 1283-84 (E.D. Cal. 2018) (citing *City of Newport v. Fact Conerts, Inc.*, 453 U.S. 247, 271 (1981) ("public entities, like the City, are immune from punitive damages under § 1983 and California law.").

Other than to comment that The Regents' request to dismiss his prayer for punitive damages is a "pointless endeavor," Weinhaus offers no legal argument in his Opposition. (Opp'n, p. 19 fn.13.) His prayer for punitive damages is dismissed as a result.

## IV.   CONCLUSION

For the foregoing reasons, The Regents' motion to dismiss is GRANTED and Plaintiff's First Amended Complaint is DISMISSED in its entirety. Plaintiff's Fifth through Ninth Causes of Action are DISMISSED WITH PREJUDICE. Plaintiff's First through Fourth Causes of Action are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED

DATED: _____, 2025     By: _____
               HON. JOHN F. WALTER
               United States District Judge

**Submitted by:**

Dated: June 4, 2025

QUARLES & BRADY LLP

By: _/s/ Matthew W. Burris_

SANDRA L. McDONOUGH
MATTHEW W. BURRIS
KELLY M. BUTLER
Attorneys for THE REGENTS OF THE UNIVERSITY OF CALIFORNIA